ABNER PRENTISS *vs.* WILLIAM B. WOOD.

Worcester.    October 6. — 25, 1875.    WELLS & AMES, JJ., absent.

W., the owner of several parcels of land on a river, conveyed some of them to A. and B., the grantees covenanting to build a dam across the river six feet high on or before a certain date, or to give up the premises to W. Before this time arrived, A. and B. conveyed to C. a portion of the land conveyed to them, describing it as a water privilege on said river, by a deed providing that C. "is to have the right to build a dam across said river as high as he shall need, by his being responsible for all damage that may be done by flowing in consequence of said dam, excepting as is hereinafter provided, to wit, that said C. shall have the right to flow the land of said A. and B. without paying damage therefor, so far and so high as he can do so, without setting back the water upon the wheel of A. and B.'s grist mill, so as in any manner to obstruct said wheel or injure the privilege of A. and B." The deed also provided that C. should have the right to flow the land of W. above the dam without paying damages; that W. should convey to C. a piece of land for the purpose of digging a canal to turn the water from the natural stream for the purpose of erecting mills, where it should be most convenient; and that C. should build a dam across said stream not less than six feet high on or before the date mentioned in the deed from W., or give up the premises to his grantors. The deed also conveyed a tract of land on the south side of the river two rods in width on the river, and as part of the transaction W. conveyed to C. a tract of land on

the north side of the river for the purpose of a canal, the upper end of which was opposite the strip of two rods. C. built the dam six feet in height between these two pieces of land, one of his grantors pointing out the place of building, and it did not appear that any objection was ever made by any of the parties interested. A. and B. subsequently sold the grist mill to the plaintiff. The dam, as built, set back the water and prevented, to some extent, the working of the grist mill. The dam, if it had been built further down the stream, as it might have been, would not have set back the water as much as it did. *Held*, that the plaintiff could not maintain a bill in equity to enjoin C. from maintaining his dam at the height of six feet.

BILL IN EQUITY, filed January 28, 1874, by the owner of a mill privilege on the Sudbury River, praying that the defendant, the owner of another mill privilege lower down the river, might be enjoined from maintaining his dam at such a height as to set back the water of said river upon the wheel of the plaintiff's mill.

The case was reserved by *Colt*, J., upon the pleadings and the report of a master, for the consideration of the full court, and was as follows:

On January 13, 1846, John Adams and Almond Adams were the owners in fee of a certain mill privilege, dam and mill therewith connected, situated on Sudbury River, in the town of Westborough. For a number of years prior thereto said mill had been operated by means of a head of water raised by said dam. The plaintiff became the owner of one undivided half of said mill and mill privilege in the year 1855, and of the other undivided half thereof in the year 1870, and had by himself, and in connection with others, operated said mill since 1855.

On January 13, 1846, John and Almond Adams conveyed to the defendant, William B. Wood, a water privilege on Sudbury River, by a deed containing various provisions, of which the following only are now material: " The said William B. is to have the right to build a dam across said river as high as he shall need, by their being responsible for all damage that may be done by flowing in consequence of said dam, excepting as is hereinafter provided, to wit, the said William B. shall have the right to flow the land of said John and Almond without paying damage therefor, so far and so high as they can do so without setting the water back upon the wheel of their grist mill, so as in any manner to obstruct said wheel or injure the privilege of said John and Almond."

" And also the right, without paying damage, to flow the land of Jonathan Winchester above said dam. And the said John and Almond covenant and agree that said Winchester shall convey to said William B. a piece of land, not exceeding two acres, at twenty-five dollars per acre, for the purpose of digging a canal to turn the water from the natural stream for the purpose of erecting mills where it will be most convenient. And said William B. obligates himself to build a dam, not less than six feet high, across said stream, on or before the ninth day of November, 1846, or give up the premises to the said John and Almond, without any consideration therefor."

" Also one other piece of land, situated in said Hopkinton, on the south side of Sudbury River, containing thirteen and seven tenths rods, more or less, bounded as follows, viz. : beginning at a stake and stones in the centre of Sudbury River, and at the westerly edge of the foundation of an old road; thence S. 41¼° W. six rods and ⅖ of a rod to a stake and stone by a large rock ; then S. 55° 45′ 20″ E. two rods to a stone on a large rock at the easterly side of said rock ; then N. 41¼° E. six rods and seventeen twentieths of a rod, more or less, passing a large rock with a stake and stones by it to the centre of said river, then up said river, in the centre of the same, two rods, to the point of departure.

" Also the said William B. is to have the right of turning the water from the channel, or where it now runs, northerly of said stream."

On January 13, 1846, there was an old causeway from ten to twelve feet in width, on the westerly side of said strip of land, two rods wide, running northeasterly the whole length of said parcel (formerly crossing said stream by a bridge) and extending in a straight line over the second parcel above mentioned.

On May 9, 1845, Jonathan Winchester conveyed to said John and Almond Adams a portion of the real estate and rights described and set forth in said deed from said John and Almond to the defendant, including the above mentioned parcels, and in the deed from Winchester there was a clause setting forth that John and Almond Adams obligated themselves to build a dam across Sudbury River, six feet high, within eighteen months from May 9, 1845, or give up the premises described in said deed without any consideration therefor.

The defendant built a dam across said stream upon the westerly side of said strip of land two rods wide, or upon the side thereof furthest up the stream, by making use of the old causeway, and placing loose stone, earth and trees thereon. The rollway of said dam was about seventy-two feet in length, and at the northeasterly side of said rollway there was a wasteway sixteen feet in width, in the middle of which were movable planks four feet in length and from ten to twelve inches in width, and beyond this wasteway and northeasterly therefrom there was a canal to conduct the water to the defendant's mill lower down the stream. Before commencing work upon the dam, Almond Adams pointed out to the defendant where the same should be placed, and the dam was built upon the place so designated. On November 6, 1846, the site of the dam had been selected and the work thereon substantially completed, but the dam was not then at its full height, as at its final completion early the next season, and in other respects was not fully complete ; said Almond Adams gave the defendant a writing under seal, purporting to be the instrument of John and Almond Adams, but signed only by the latter, therein stating that he was satisfied that said dam was built as described in said deed in every respect. Winchester also gave a writing to the defendant of similar purport.

The dam, at the time of its completion, was not over six feet in height, has not been raised since, and is not now over six feet high.

The top of the defendant's dam is one $\frac{31}{100}$ feet above the aproning of the plaintiff's mill, and by reason of the existence of the defendant's dam the water is set back upon the wheel of the plaintiff, and this setting back does impede and interfere with the operation of the wheel of the plaintiff's mill, in such manner as injuriously to affect the full working power of the mill.

The above mentioned strip of land, two rods wide, and the parcel adjoining the same above referred to, was the place on the stream where the dam should be built; but the defendant, instead of building said dam on the side of the land further up, might have built it thereon further down the stream ; and if he had built the same upon said parcel of land further down the stream the water would not have set back on the wheel of the plaintiff's mill to the extent the same now does, but to what extent, how . much, if at all, was not disclosed in the evidence.

The canal above mentioned on the northeasterly side of the dam carried the water from the defendant's pond to a flume near the defendant's mill; a raceway ran from the flume, and when the flume was full, the distance from the top of the water in the flume to the aproning of said flume was ten $\frac{82}{100}$ feet, and the fall from the top of the dam to the aproning of the flume is ten $\frac{82}{100}$ feet.

*H. B. Staples & F. P. Goulding,* for the plaintiff.

*L. H. Wakefield,* for the defendant.

MORTON, J. The basis of the plaintiff's bill is that the defendant has built and maintained his dam higher than he was entitled to under the deed from John and Almond Adams.

This deed, which was dated January 13, 1846, grants to the defendant a certain water privilege on Sudbury River, and provides that " the said William B. is to have the right to build a dam across said river as high as he shall need by their being responsible for all damages that may be done by flowing in consequence of said dam, excepting as is hereinafter provided, to wit, the said William B. shall have the right to flow the land of said John and Almond without paying damage therefor, so far and so high as they can do so without setting the water back upon the wheel of their grist mill, so as in any manner to obstruct said wheel or injure the privilege of said John and Almond." The plaintiff contends that this clause limits the right of the defendant, so that he could not build a dam which would flow the water back upon the wheel of the mill above; but we are unable to adopt this construction. Its natural construction is, that it gives the defendant the right to build the dam as high as he shall need, he paying all damages, with the proviso that he is not to pay the grantors any damage unless it flows the water back upon their wheel. The clause as to setting the water back upon the grantor's wheel is a limitation of the right to flow without paying damages, not a limitation of the principal right granted to build a dam as high as he shall need. The other parts of the deed and the situation and apparent purposes of the parties, tend strongly to show that this was the intention of the parties. This deed seems to have been a part of a general scheme of improvement, by establishing upon this privilege as large a factory as was practicable, in which all the parties to the deed and Winchester,

an adjoining landowner, were jointly interested. Beside the exemption from responsibility for damages above stated, it provides that the defendant shall not be required to pay any damages for flowing Winchester's land, and that Winchester shall convey to him a tract of land upon the river for the purposes of a canal to his mills.

The deed contains a conveyance of two pieces of land on the south side of the river, which the grantors held under a deed from Winchester, containing the provision that the said John and Almond Adams should build a dam across Sudbury River, six feet high, within eighteen months from the ninth day of May, 1845, or give up the premises without any consideration therefor. They therefore inserted in their deed to the defendant the provision that the " said William B. obligates himself to build a dam, not less than six feet high, across said stream, on or before the ninth day of November, 1846, or give up the premises to the said John and Almond, without any consideration therefor." This is an important stipulation, in which Winchester is interested, and which the grantors could not waive in whole or in part. It obliged the defendant to build his dam, wherever upon the stream it was located, to a height of at least six feet, and shows clearly that it was not the intention, in the clause we are construing, to limit the dam to such a height that it would not flow the water back upon the wheel of the mill above. The master has found that the defendant built and has maintained his dam at the height of six feet, and we are of opinion that he had the right to do so under his deed.

But the plaintiff contends that if the defendant had the right to build his dam six feet high, yet he was required to build it at such a point on the stream as would do the least damage to the mill above, and therefore that the dam should have been built lower down the stream. We do not think the plaintiff can now take this ground. The deed grants the water privilege and the right to build a dam, without fixing the place where it was to be built. It conveys a tract of land on the south side which has a width of two rods on the river, and as a part of the transaction, Winchester conveys to the defendant a piece of land on the north side of the river, for the purposes of a canal, the upper end of which is opposite the strip of two rods. The defendant proceeded

to build his dam between these two lots.   There was evidence that one of the grantors pointed out the place to build it, and it does not appear that any party in interest objected to the location selected.   These facts and the acquiescence of all parties for many years, show satisfactorily that the dam was located at its present position by the general consent and understanding of all parties in interest.

It is not necessary to consider the effect of the instrument signed by Almond Adams on November 6, 1846.   The dam was not fully completed, and its design was to prevent the forfeiture which the defendant would incur if it was not built by November 9, 1846.   In the view we have taken it is immaterial, except as evidence of the acquiescence of the parties in the location of the dam.

The result is that the plaintiff's bill is founded upon an erroneous construction of the deed to the defendant, and that his remedy, for obstructing his water wheel, if any, is by proceedings at law.                                        *Bill dismissed.*