JOSIAH BARBER, Respondent, *v.* LORENZO W. NYE, Appellant.

In 1814 D. conveyed to M. & B. certain premises, with the privilege, should it be necessary for the purpose of driving machinery thereon, to construct a dam across a creek on other lands of D., and to take the water therefrom in race-ways, so as to give the grantees "the best possible use of the water." Under this grant a dam was built on D.'s land. In 1864, the old dam having become dilapidated, defendant, who had succeeded to the title and interests of M. & B,. built a dam on his own lands, and the old dam was removed. Plaintiff, who claimed through mesne conveyances from D. certain lands above the old dam flowed by its waters, brought this action to recover damages for flowing his lands by means of the new dam. It was found, in substance, that the new dam did not set back the waters upon plaintiff's premises to a higher point than the old dam, as it was a few years before its abandonment, and until it became dilapidated. *Held* (DWIGHT, C., dissenting), that by the grant to M. & B., they were not only permitted but required to adopt all proper and practicable means to obtain the use of the waters without erecting a dam on the lands of D., and when the original necessity for its erection ceased, and the use could be obtained by a dam on the premises conveyed, without an increase of the flow upon plaintiff's land, defendant had the right to make the change; that while the erection of the old dam, and the subsequent use of the water so acquired, may have fixed and limited the right of flowage, the erection of the new dam and the abandonment of the old did not terminate the right; and that plaintiff could not maintain his action.

(Argued January 8, 1875; decided May term, 1875.)

APPEAL from an order of the General Term of the Supreme Court in the fourth judicial department, reversing a judgment

in favor of defendant, entered on the report of a referee, and granting a new trial.

The action was brought by the plaintiff to recover damages of the defendant for wrongfully obstructing and flowing back the waters of the Owasco river, upon the plaintiff's premises and water-wheel, situate in the city of Auburn.

The plaintiff is the owner of certain premises extending east and west of Washington street, in said city, adjoining and above lands of defendant. The Owasco outlet flows across plaintiff's lands and thence over defendant's lands. The plaintiff has a manufacturing establishment on his lands, the machinery of which is propelled by this water power; and it is alleged that about two years before this suit was commenced, and in the fall of 1864, the defendant erected a dam on the premises owned by him, so high as to flow back the water upon the plaintiff's lands to such an extent as to seriously retard the power of his water-wheels.

The facts material to the questions presented, sufficiently appear in the opinion.

*Daniel Pratt* for the appellant. Defendant, having acquired title to the land on which the old dam was situated, could move it to any place on his own lands if he did not thereby raise the water. (Ang. on Water-courses, §§ 197, 363; *Garrison* v. *Walker*, 11 Gray, 426; *Boynton* v. *Rees*, 8 Pick., 329; *Cary* v. *Daniels*, 8 Metc., 466.)

*H. V. Howland* for the respondent. Defendant, under the grant of 1814, had no right to change the location of the dam. (*Vandenburgh* v. *Van Bergen*, 13 J. R., 212; *Van Valkenburgh* v. *Van Buren*, id., 552.) To establish a presumptive right to an easement, the origin of the user must have been adverse to the owner of the fee. (*U. S.* v. *Anerdor*, 6 Pet., 743.)

LOTT, Ch. C. It is claimed on behalf of the plaintiff that the referee has not found facts sufficient to establish a prescrip-

tive right in the defendant to flow the plaintiff's land, and the counsel of the defendant disclaims such right. It is therefore unnecessary to examine that question. The defence of the defendant is based on a grant by Samuel Dill, the common source of the title of both parties, contained in a deed from him to Elijah Miller and John H. Beach, bearing date the 12th day of September, 1814, conveying ten acres of land lying on Owasco creek, westerly of and below the premises of the plaintiff, and the deed also granted as follows, viz. : "Also the privilege, should it be necessary for the purpose of driving machinery by the water of said Owasco creek, to build and construct a dam on the land of said Samuel Dill, at any place within forty rods of the great falls on said creek, and to take the water in race-ways on the said Dill's land, so as the said grantees, their assigns and associates, should be enabled to take the best possible use of the water." The defendant became vested with all the rights of Miller and Beach, acquired and derived by and under that deed, prior to the year 1864, and the findings of the referee show the following facts :

First. That in the year 1816, the said grantees, or their assigns, erected a building for a cotton factory upon the land so conveyed to them, and also a dam across said creek on the land of said Dill, within forty rods of the great falls thereon, and thirty rods, or thereabouts, above said factory, for the purpose of supplying water to the said factory ; and that the factory was used and supplied with water by the said dam and the race-ways therefrom, since the time of its erection until the construction of a new dam in the fall of 1864, as hereinafter stated.

Second. That the plaintiff, in the year 1845, acquired the title (subject to the rights of the grantees of the land so granted to Miller and Beach) to his lands through sundry mesne conveyances from Dill, and that he has erected mills and machinery thereon to be operated by the water power of the said creek, but those lands do not include that on which the said dam was erected.

Third. That in the fall of 1864, a new dam with a waste-

way was constructed by the defendant across the said creek upon his own premises to supply said factory, about thirty rods below the dam erected in 1816, which had then become dilapidated and settled, and it was subsequently, in the spring of 1865, removed.

It is further found specifically as follows : " That the dam of 1816 set back, to some extent, the water of the creek upon the said premises of the plaintiff ; that after it became dilapidated it did not do this to the same extent as when it was new and tight ; that the present dam is no higher than the dam of 1816, as originally built, and with the waste-way aforesaid has equal or greater capacity to discharge the water of the creek ; that although the water of the creek sets back upon the premises of the plaintiff to a higher point with the present dam than with the old one, as it was for several years before the new dam was built, this result is owing to the settled and dilapidated condition of the dam of 1816 during the time last aforesaid."

The referee, on his construction of the grant in question and the facts so found, came to the conclusion, as a matter of law, that the plaintiff was not entitled to recover, and rendered judgment for the defendant, which was reversed at the General Term. Such reversal was made, as stated in the opinion then given by MULLIN, P. J. (after a suggestion by him that the grant gave the defendant no right to flow lands by a dam erected on his own land), upon the ground " that to authorize a judgment in favor of defendant a prescriptive right to flow plaintiff's land must be established." He, in a subsequent opinion given on a motion for reargument, stated that the court had also decided that the dam erected under the deed from Dill fixed the rights of the parties, and that no higher dam could be erected; that the defendant, under the grant, could not build another dam at a different place on Dill's land, but that it must remain on the site originally selected, and, therefore, when he built a new dam on his own land and abandoned the old, his right under the old grant terminated. The last of those propositions presents the mate-

rial question for our decision on the present appeal, and we, after a careful consideration of it, are constrained to give a different construction as to the nature and effect of the grant. It appears to have been understood by the parties thereto that the land conveyed by the deed containing it was purchased and intended to be used for a purpose or in a manner that would require the use of the water on Owasco creek for "driving machinery" in the buildings that might be erected thereon, and that the grantees, their assigns and associates, should have the right "to take the best possible use of the water." It is also evident, from the terms and language of the privilege, that the parties also contemplated, or believed, that it might become necessary, for the purpose of enabling them to obtain and fully secure such use, that a portion of the land of Dill, not conveyed to Miller and Beach, should be appropriated to the attainment of that object, so far as to erect a dam thereon, and to take the water in race-ways over it to the land so conveyed and the buildings placed thereon, and there is nothing in the grant of such right to exclude or prevent the said grantees or those claiming under them from erecting a dam on their own land in case such necessity to use Dill's land did not arise. On the contrary, the fair and reasonable inference is that they should not only be *permitted*, but be *required* to adopt all proper and practicable means for the purpose of enabling them to obtain such use before they could exercise the privilege of erecting a dam on the adjoining land of Dill. Assuming this construction of the nature and effect of the grant to be correct, there is no reason why the dam which was built in the exercise of such privilege should be continued after the original necessity for its erection ceased, and its continuance became unnecessary by another dam erected on the land conveyed by the said deed, which secured the same beneficial use of the water, without an increase of its flow on the plaintiff's land or the imposition of any additional burden thereon, or subjecting it to a greater or different servitude than was created by the old dam. Its abandonment by the defendant did not divest him

of the right to use the land included in the said deed as fully
and beneficially as it could have been before the said dam was
erected.   The right to use the water is entirely distinct from
and independent of that to use Dill's land for the erection of a
dam, as authorized by the grant, which is only a means more
effectually to make the water available.   That erection and the
subsequent use of the water thereby acquired may have fixed
and limited the extent of the right of flowage on the plaintiff's
land, but did not nullify or destroy the right itself.   Whether
a new dam could have been substituted for the original dam at
a different place, on Dill's land, from that originally selected
and appropriated for the erection thereof, or whether another
dam could now be erected there, are questions not presented
by the facts found by the referee, and on which the expression
of an opinion is unnecessary and would be improper on the
present appeal.   It is sufficient now to decide that the defend-
ant was authorized to erect the new dam on his own land, and
as the referee has found as a fact that it is no higher than the
old dam, and that it does not set the water back upon the
premises of the plaintiff to a higher point than was done by
the old one as originally built, and before it settled and became
dilapidated, as above stated, he rightly decided that the plain-
tiff was not entitled to maintain this action.

It consequently follows that the General Term, in revers-
ing the judgment entered, in accordance with such decision,
in favor of the defendant, and granting a new trial, was
erroneous.   That order must, therefore, be reversed, and the
original judgment must be affirmed with costs.

DWIGHT, C. (dissenting).   The facts of this case, as found
by the referee, show that, in the year 1814, one Dill was the
owner in fee of certain premises on the Owasco creek, in the
town of Auburn, Cayuga county, lying on both sides of the
creek.   On September twelfth of the same year, he conveyed
to Miller and Beach ten acres, part of these premises on the
creek lying below the land now owned by the plaintiff, with
the right, should it be necessary for the purpose of driving

machinery by the water of the Owasco creek, to build and construct a dam on the land of Dill, at any place within forty rods of the great falls on said creek, and to take the water in race-ways over Dill's land, so as the grantees, assigns, etc., should be enabled to make the best possible use of the water.

In 1816 the grantees erected a building for a cotton factory upon the premises so conveyed to them as aforesaid, and a dam on the land of Dill, within forty rods of the falls and thirty rods above the factory, for the purpose of supplying water to the factory. This was the source of the water supply to the factory until the construction of the new dam, hereinafter referred to. The defendant, prior to 1864, succeeded to the rights of Miller and Beach, and also to the title to the land on which the dam was erected.

After the erection of the factory and the dam, Dill conveyed another parcel of land on the creek to the plaintiff. This was higher up than that conveyed to Miller and Beach, and subject to their rights.

In 1864, the dam of 1816 having become dilapidated and settled, the defendant built a new dam upon his own land, about thirty rods below. At that time the timbers of the old dam had in part gone out, and in 1865 it was practically destroyed.

The dam of 1816 set back, to some extent, the water of the creek upon the plaintiff's premises. After it became dilapidated it did not do this to the same extent as when it was new and tight. The present dam is no higher than that of 1816, and has equal capacity to discharge water. Though the water of the creek sets back upon the premises of the plaintiff to a higher point with the present dam than with the old one, as the latter stood several years before the new dam was built, this difference is owing to the settled and dilapidated condition of the dam of 1816, during the latter part of its existence.

Under this state of facts the question is, (1) What are the rights of the defendant under the deed of 1814, considered as a grant? (2) What are his rights, if any, under the theories of prescription?

1. Considering his position as a grantee of an easement, I think that he must be confined to the exercise of the rights according to the terms of his deed. This was by no means the case of a general and indeterminate grant to flow the upland. *That* was only subject to flowage from the results of a dam erected at a specified place and used in a prescribed manner. It is a general rule in the law of easements created by grant, that when a specified mode of exercising them is pointed out that must be followed. The burden upon the land must not only not be increased, but must not be varied from. The fact that the defendant subsequently acquired the land on which the dam stood is immaterial. The point of inquiry is, what are the defendant's rights as to casting a burden upon the land of the plaintiff, who claims under Dill, the common grantor? If Dill had remained owner, the defendant could only have flooded his land in accordance with the terms of the grant. As against the plaintiff, he can do no more. The plaintiff has a right to repose upon the restrictions in his grant, and to maintain that the easement shall only be exercised in the precise manner granted.

Illustrations of this subject may be derived from grants of rights of way. A distinction is taken between a grant which is indefinite in its limitation and one where, from the nature of the use or from its terms, it is restricted and defined. Thus, if a way be granted to a particular corner of a field, the grantee of it may not enter at any other point. (*Henning* v. *Burnet,* 8 Exch., 187.) So a right of way "over and along" a strip of land does not give a right to go "across" it. (*Senhouse* v. *Christian,* 1 Term R, 560.)

Had there been in the case at bar a general right to flow for the purposes of a water power, the land now the property of the plaintiff, it would have been immaterial where the dam was placed. The contract would then have been for a certain amount of burden upon the land. But that is not this case. The contract here is to erect a dam in a specified place, and to obtain a water power in that manner. Although the land on which the dam stands may now belong to the defendant, yet

so far as the plaintiff is concerned, the grant is binding on him only when exercised according to its terms. The correct theory of the case is, that the language of the deed gave the grantee a right of election to determine precisely where the original dam should be erected, and that election having been exercised, the right to elect has been exhausted. The subject is treated in this manner in *Goodrich* v. *Longley* (1 Gray, 615). In that case, there was the privilege of constructing and building a dam upon the land of G., at the outlet of M. pond, for the purpose of raising a head of water upon said pond. It was held, that this indenture did not authorize L., after erecting and completing one dam on G.'s land, to change its hight or location. This case is very strong, since it was conceded that the grant, in its terms, was without restriction as to the quantity of land to be taken, or the time within which the dam was to be constructed. But the court said, that " it would by no means follow that the grantees, after the limits of the dam had been marked out and the structure fully completed, would have the right either to make a new location, or so to change the structure as to cover more land of the grantor, or cause more of his land to be flowed. On the other hand, the reasonable construction of the grant seems to us to ·be, *that when the grantees had located their dam and completed the structure, the right of appropriating the land for that purpose was exhausted.*" (Page 617.)

In *Jennison* v. *Walker* (11 Gray, 423), the defendant had a right to lay an aqueduct across the plaintiff's land, from a spring to his own land. Having laid down logs for this purpose, it was held that he could not afterwards change their direction. The principle was laid down in the following terms : Where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee has not thereby a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. When the right granted has been one exercised in a fixed and defined

cause, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. If it be admitted that he has the right originally to select the place in which the easement is to be enjoyed, he cannot afterwards alter it. * * * This rule rests on the principle that where the terms of a grant are general or indefinite, so that its construction is uncertain or ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of their intent. (See, also, *Cooke* v. *Booth,* Cowp., 819.) The law is still more clear where the grant is to flow land with water by means of a dam erected at a particular place. A distinction between such a restricted and an unrestricted right is carefully drawn in *Stackpole* v. *Curtis* (32 Me., 383). So it was held in *Morehead* v. *Snyder* (31 Penn. St., 514), that the grant of a right of a tail-race over the land of another is transitory as to position only until the race is once made. *Dickierson* v. *Mixter* (13 Metc., 217) is a strong instance of a close construction of specific grants of this kind. The plaintiff, in that case, had conveyed to one Waite, a grantor of the defendant, a narrow strip of land to enable him to erect a mill-dam thereon, and also the right to build *upon the land of the grantor*, near the north-west corner of S. W.'s land, a mill or a factory, and the right to dig a canal from the mill-dam to such mill as might be erected. The mill was not in fact built upon the plaintiff's land, but on a small piece of land adjoining to it, and near to the specified course. The canal was dug by the defendant across the plaintiff's land, and discharged the water into the same place where it would have been discharged, if the mill had been built on the plaintiff's land. The court held that there was no right under the plaintiff's grant to dig a canal in any other place than that designated in the deed. (P. 220.)

In the case at bar, the plaintiff is in no way affected by the fact that the defendant has acquired the ownership of the land on which the dam originally stood, in addition to that on which the new dam is constructed.

He purchased simply subject to a dam to be erected on

Dill's land.  It must still be erected on land that *belonged to Dill* at the time when the easement was created.

2.  If the defendant could maintain a prescriptive right to the property, another rule would be applicable.   That would have given him a right to flood the land to the hight which his dam had set the water back for twenty years, without any reference to the place where the dam had stood.   The substance of a prescriptive right is the burden or easement upon the land, and the mode in which it is exercised is immaterial. So a change in the place of a dam is of no importance under a claim by prescription.  (*Davis* v. *Brigham,* 29 Me., 391; *Stackpole* v. *Curtis,* 32 id., 382; *Whittier* v. *Cocheco Mfg. Co.,* 9 N. H., 454; Washb. on Easements, 105, parag. 53.)   In this respect it differs materially from a right created by a specific grant, which can only be exercised in accordance with its terms.

The defendant, however, cannot claim by prescription in the present case, but must confine himself to his grant.   Where an easement has been created by grant or reservation, no use of it will be held to be adverse, which can be construed to be consistent with the terms of the grant or reservation, and consequently the extent of the easement will be limited by the terms of such grant or reservation.  (Washb. on Easements, 94, par. 37; *Atkins* v. *Boardman,* 20 Pick., 291; S. C., 2 Metc., 457; *Gayetty* v. *Bethune,* 14 Mass., 49; *Wheatley* v. *Chrisman,* 24 Penn. St., 298.)   In other words, the law never presumes a grant nor raises a prescription from actual use where there has been an express grant to which the use substantially conforms.   (Same cases.)

But if a prescriptive right could be set up there is another difficulty in the present case.   There is no finding of fact that the dam maintained its original hight for twenty years.   It was found to be settled and dilapidated when the new dam was erected.   How long this had been so was unknown, or at least was unascertained by the referee.   If, during a portion of the prescriptive period, the dam had been leaky and for that reason the water had not been set back to the full

capacity of the dam, it could not, on its restoration, be made to flood the land, according to its original capacity, to set back the water. (*Mertz* v. *Dorney*, 25 Penn. St., 519.) The measure of the prescriptive right is the extent of the land actually flooded.

The case, when summed up, amounts to this : The plaintiff must rely upon his specific grant. This does not authorize him to change the location of his dam. He cannot claim by prescription for two reasons : First, because that doctrine does not apply where the use substantially follows the grant. Second, because the use has not been shown to be continuous in such a sense that the water has been kept up for twenty years to the hight to which the new dam now sets it back.

The judgment of the court below should be affirmed.

All concur with LOTT, Ch. C., except DWIGHT, C., dissenting.

Order reversed, and judgment on report of referee affirmed.