MARTHA A. S. FORBES *vs.* COMMONWEALTH.

Worcester.   October 5, 1898. — January 4, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Land Damages — Mill — Easement — Merger.*

In general, an easement acquired by reservation or grant of a right to raise the water of a stream to a certain height appurtenant to a mill privilege is appurtenant to every part of such privilege.

If the right to flow land is created by reservation and by grant to a mill corporation, its successors and assigns forever, with no limitation that the right to raise the water to the height mentioned shall be confined to any particular use of the water, an easement appurtenant to the mill privilege of the corporation is created, and will not be destroyed by taking down the dam and erecting a new one in its place, or by erecting a new dam across the stream above the old dam, on land which was a part of such mill privilege and which is conveyed, with its appurtenances, by the corporation to the Commonwealth, pursuant to St. 1895,

c. 488; and if the Commonwealth, under that statute, subsequently takes the servient land in fee, the land is to be treated as subject to the easement in assessing the damages.

PETITION to the Superior Court for an assessment of the damages occasioned by the taking of the petitioner's land in Clinton by the Metropolitan Water Board, under St. 1895, c. 488. Trial, without a jury, before *Gaskill*, J., who found for the petitioner, and, with the consent of the parties, reported the case for the determination of this court. If there was no error in any of the rulings, judgment was to be entered on the finding; otherwise, judgment was to be entered for the petitioner, in the sum of $3,500, — or of $2,200, — as law and justice required. The facts appear in the opinion.

*J. M. Hallowell*, Assistant Attorney General, for the Commonwealth.

*H. Parker*, (*C. Bullock* with him,) for the petitioner.

FIELD, C. J. The petitioner's title to the land taken by the Metropolitan Water Board, in pursuance of St. 1895, c. 488, was derived through mesne conveyances from the Lancaster Mills, a corporation engaged in the business of manufacturing · cotton cloth by means of mills and a dam on the south branch of the Nashua River. The deed of the Lancaster Mills to Franklin Forbes, the petitioner's predecessor in title, contained this reservation : " Reserving to the said Lancaster Mills, their successors and assigns, the right to raise and maintain forever their dam, by flashboards or otherwise, three feet above its present height, without being subject to any claim or demand from said grantee, his heirs or assigns, for damages to said Barnard Farm, or to said Upper Intervale by reason thereof." Afterwards, and while he held the title, Franklin Forbes, by deed dated March 31, 1868, conveyed to said Lancaster Mills, its successors and assigns, the right to flow said land " by back water from the dam of said corporation raised and maintained forever, by permanent structure or otherwise, one foot above the present permanent height thereof." The report of the case by the justice of the Superior Court then proceeds as follows :

" It was agreed that the said dam of the Lancaster Mills maintained at the height referred to in these deeds would and did flow the said petitioner's land, taken as aforesaid, up to the

flowage line designated upon the accompanying plan referred to, annexed hereto, marked ' Exhibit B.'

" On the 15th day of May, 1897, the Metropolitan Water Board, acting for the Commonwealth of Massachusetts, under authority of chapter 488 of the Acts of 1895, and in pursuance of the construction of the system of Metropolitan Water Works provided for by said act, entered into an agreement with said Lancaster Mills, whereby said board was authorized on and after June 1st, 1897, to take down the upper portion of said Lancaster Mills dam, not exceeding six feet below the top of flashboards; to lower the water in the mill-pond by means of taking down the upper portion of the dam as aforesaid; to erect a temporary dam at a point further up the stream, and during the time the water was drawn off the mill-pond to supply the mills of said corporation with water, through a pipe running from the temporary dam to the mills; and when the purposes for which said mill-pond was so emptied, namely, the construction of the dam for the reservoir of the Metropolitan Water Works, were accomplished, to rebuild said mill-dam, in accordance with § 9 of said chapter 488 of the Acts of 1895. . . .

" About the 1st day of July, 1897, the servants of the Commonwealth, under the terms of said agreement with the Lancaster Mills, entered upon land of said Lancaster Mills, and began taking down the dam, as by said agreement authorized.

" On the 21st day of July, 1897, said dam had been taken down to a depth of five feet; on the 28th day of August, said dam had been so far destroyed and obliterated as to draw off the water of the former mill-pond or reservoir of said Lancaster Mills, and the waters have since flowed within the original channel of the river, no part of petitioner's land being flowed.

" The further prosecution of the works of said Metropolitan Water Board, under the provisions of said act, require the construction of a permanent dam for a reservoir of the Metropolitan Water Works, at a point above the original dam of said Lancaster Mills, referred to in said Forbes deed, and within the limits of the former mill-pond. Said dam, so to be constructed, will be situate above said Lancaster Mills dam, and below said lands of the petitioner. When said dam is so constructed, the lands of the petitioner will be wholly within the basin and

reservoir for water caused by said dam so to be constructed for the Metropolitan Water Works ; so that the entire flowage of petitioner's lands will be from the said dam so to be constructed, and not at all from said original dam when or if reconstructed.

" On the 21st day of July, 1897, the Lancaster Mills conveyed to the Commonwealth a parcel of land covered in part by the former mill-pond of said Lancaster Mills, which tract of land is situate within the former limits of said Lancaster Mill-pond, and between the dam of said Lancaster Mills and the petitioner's land, etc.

" The Lancaster Mills also conveyed to the Commonwealth ' all the mill privileges in said Clinton, owned by said grantor corporation, and situate on said southerly branch of the Nashua River, south of the northerly boundary line of the above described parcel and its tributaries entering said river south of said northerly boundary line ; and all right, title, and interest in the fee of land in Clinton under said Nashua River and situate southerly of said northerly boundary line, and under its tributaries entering said river south of said northerly boundary line, and all flowage rights south of said northerly boundary line.' The right of flowage on petitioner's lands, formerly held by Lancaster Mills, being included in the terms and description of said conveyance. . . .

" On the 23d day of September, 1897, the Commonwealth, under the provisions of said chapter 488, made a taking of the said petitioner's lands, the title to which, it was agreed, was then in the petitioner, Martha A. S. Forbes, subject only to flowage rights hereinabove referred to, if any, the petitioner contending that no such flowage rights existed when lands were taken as aforesaid.

" Upon the foregoing facts, the petitioner asked the court to rule that her land, when taken by the Commonwealth, was subject to no flowage rights ; and asked the court to rule that the rights of flowage formerly held by the Lancaster Mills had been and were extinguished and abandoned before the said taking of the petitioner's lands ; and further asked the court to rule that by the said taking by the said Commonwealth the said easements were *eo instanti* extinguished.

" It was agreed between the parties that, if said contention of

petitioner were sustained, damages were to be assessed for the petitioner in the sum of $3,500; if not sustained, then for $2,200."

The justice assessed damages in the sum of $2,200, and then reported the case to this court.

It thus appears that the right to flow the lands of the petitioner was created by reservation and by grant, and that the reservation and the grant were to the Lancaster Mills, its successors and assigns forever. There is no limitation in the reservation or the grant that the right to raise the water to the height mentioned should be confined to any particular use of the water. The charter and the title of the Lancaster Mills to the mill privilege are not set out, but it is, we think, to be assumed that it held its mill privilege with its appurtenances in fee simple, and had the power to convey it in whole or in part in fee simple, with its appurtenances, to any grantee. This reservation and this grant of the right to flow the petitioner's land, we think, created an easement appurtenant to the mill privilege of the Lancaster Mills. The height to which the right to flow extended was measured by reference to the permanent height of the existing dam of the Lancaster Mills. But the easement would not be destroyed by taking down the dam and erecting a new one in its place, or by erecting a new dam across the stream above the old dam on land which was a part of the mill privilege of the Lancaster Mills to which the easement of the right to flow was appurtenant. A right of way appurtenant to land usually is appurtenant to every part of the land when divided into parcels, and in general an easement acquired by reservation or grant of a right to raise the water of a stream to a certain height appurtenant to a mill privilege is appurtenant to every part of the mill privilege. The erection of a new dam on the mill privilege of the Lancaster Mills, whether above or below the old dam, if it raised the water of the stream no higher than the right granted, would work no injury to the petitioner. *Cary* v. *Daniels,* 8 Met. 466, 483. *Clinton Gas Light Co.* v. *Fuller,* 170 Mass. 82. See *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152, 171; *Stackpole* v. *Curtis,* 32 Maine, 383; Gould, Waters, (2d ed.) § 344.

If the Metropolitan Water Board had taken by the same tak-

ing the whole mill privilege of the Lancaster Mills and the land of the petitioner, the value of the mill privilege would have been enhanced by the value of the easement appurtenant to it, and the value of the petitioner's land would have been diminished by the value of the easement to which the land was subject. But the rights of the petitioner are not affected by the fact that the board acquired a part of the mill privilege with its appurtenances, by purchase pursuant to St. 1895, c. 488, § 4. Afterwards the petitioner's land was taken, as we understand, in fee. There was no merger of the title to the land with its appurtenances which had been purchased of the Lancaster Mills by the board in the name of the Commonwealth with the title to the land of the petitioner, which was taken by the board in the name of the Commonwealth, until after the taking of the petitioner's land. The merger of title, if there was a merger, was a consequence of the taking. Up to and at the time of the taking the petitioner's land was subject to the easement appurtenant to the mill privilege of the Lancaster Mills, a part of which had been conveyed to the Commonwealth.

According to the terms of the report, judgment is to be entered on the finding.                                        *So ordered.*