## NUCKOLLS, executor, *v.* ANDERSON.

1. The charge of the court as to the meaning and effect of the written contract relied on by the defendant was more favorable to the plaintiff than he had any right to demand or expect.
2. The court below should, however, have granted the plaintiff's motion for a new trial, as the evidence demanded a finding in his favor of actual damages, instead of the merely nominal amount awarded him by the jury.

Argued May 25, — Decided July 14, 1904.

Action for damages.    Before Judge Fite.    Whitfield superior court.    December 16, 1903.

*R. J. & J. McCamy,* for plaintiff.
*Shumate & Maddox,* for defendant.

EVANS, J.    The executors of the will of A. B. Nuckolls, deceased, brought an action against W. A. Anderson to recover damages alleged to have been sustained by reason of the maintenance by the defendant of a mill-dam which had backed water upon the lands of their testator and rendered the same unfit for cultivation.    Anderson filed an answer in which he denied the alleged trespass, and subsequently, by way of amendment, interposed the defense that in maintaining his mill-dam he was exercising only such rights as were, by contract entered into in April, 1860, granted to one Williams, his predecessor in title, by Isaac Thornton, under whom the plaintiffs' testator held the lands claimed to

have been flooded with water.     Pending the suit one of the plaintiffs died, and the action then proceeded in the name of N. B. Nuckolls, the surviving executor.     On the trial of the case he introduced evidence in support of the cause of action set forth in the petition, showing the nature and extent of the alleged trespass and the amount of damages suffered therefrom.     The defendant sought to establish the special defense relied on by him.     The jury returned a verdict in favor of the plaintiff for the sum of one dollar; whereupon he made a motion for a new trial, which was overruled, and he excepted.

1. The defendant introduced in evidence the contract on which he relied as justifying the maintenance of his mill-dam, not contending that he had any prescriptive right to maintain it at its present height.     This contract was as follows:     "State of Georgia, Whitfield County.     Articles of agreement made and entered into between John W. Williams of the one part, and Isaac Thornton of the other part:     Whereas John W. Williams do bind himself unto the said Thornton and his successors to take down his mill-dam in the time of high water down to eight inches of the original height of the dam, that is agreed on heretofore, whenever requested to by Thornton; and said Thornton do give the said Williams leave to keep the said dam planked up to the top when it will not back water up on him.     This 2d day of April, 1860. [Signed.]    John W. Williams.     Witness, William Keown." The instrument came from the custody of the plaintiff, being brought into court in response to a notice to produce, served upon him by the defendant, and the plaintiff conceded that the contract was binding upon him, notwithstanding it had not been signed by Thornton, the latter having in his lifetime recognized the same as evidencing an agreement entered into between himself and Williams.     In one of the grounds of the motion for a new trial complaint is made of a charge of the court in which the trial judge undertook to inform the jury as to the meaning and effect of this contract and as to the respective rights of the parties thereunder. According to the construction placed upon it by the court Williams agreed that, in time of high water, he would cut the dam down to "within eight inches of the top of the old dam, leaving it eight inches higher than the old dam was, . . so as to not back [water] on the land of Thornton;" that the latter agreed that

Williams might raise the dam "to the height it was raised to before cutting off, — put the plank back, whether twelve or fifteen inches or any other number of inches, — when it would not back water upon his (Thornton's) land;" but that "the rights of the parties being determined by the height of the original dam, and it already being there, this condition having been on it, that it was a mere privilege granted to Williams by Thornton to allow him to keep eight inches above the original dam, and that Thornton would have the right to require him to take down, not only down to eight inches, but down to the height of the original dam;" and accordingly, Anderson, the defendant, has no right to maintain a dam to the height to which Williams' dam was "raised, nor eight inches above the original dam, but his right is to keep it as high as the original dam was before [it] was raised by Williams or his predecessors, and whatever that original height is or was, that is the height to which Anderson has the right to maintain his dam."

The plaintiff in error insists, (1) that the court assumed as true facts not disclosed by the evidence, and construed the contract in the light thereof; (2) that the written agreement necessarily meant that Williams was to reduce the height of his dam eight inches whenever requested; and (3) that the "paper, properly construed, was simply an acknowledgment by Williams that the Williams dam was eight inches too high, and that if Thornton would not sue him, he would take it down eight inches whenever requested by Thornton, and that in time of low water it might be restored, provided that it did not back the water on Thornton." We can not concur in the view, that, under the terms of the contract, the obligation assumed by Williams was to reduce the height of his dam eight inches, or that the instrument merely amounted to an acknowledgment by him that his dam "was eight inches too high." On the contrary, we think the language employed in drafting this contract discloses, by necessary implication, (1) that Williams was, at the time, maintaining a dam at a height greater than that of the dam originally constructed; (2) that the purpose of the agreement was to fix the respective rights of the parties, relatively to the maintenance of the dam, by declaring to what height Williams could maintain his dam at any and all seasons; and (3) that, in view of the permission granted him to maintain the dam at a greater height whenever he could

do so without backing water on Thornton's land, Williams agreed that he would not insist upon any right to unconditionally keep his dam at a greater height than that fixed by the writing, and would take down his dam to that height whenever, during a time of high water, he was requested so to do by Thornton. Doubtless both of the parties made concessions. The permission granted by Thornton amounted to something; for, without it, Williams would have no legal right (independently of a grant) to back water on his own land up to the line of Thornton's land, unless this could be done without causing undue percolation of water, injuriously affecting the latter's premises. On the other hand, Williams may in good faith have claimed a right, under a previous contract or by prescription, to maintain his dam at its then height, but, by way of compromise and to avoid dispute and possible litigation, was willing to come to an understanding with Thornton as to the height of the dam he (Williams) had a legal right at all times and under all circumstances to maintain. There is nothing to indicate that the contract was without consideration, nor was any evidence introduced which warranted the trial judge in assuming that "the rights of the parties [were] determined by the height of the original dam," and therefore the contract conferred upon Williams no right to maintain a dam of any greater height, if the effect of so doing would be to back water onto the land of Thornton. Indeed, the contract itself affords the only evidence with regard to the height at which the defendant below could legally maintain his dam despite the protests of the plaintiff. What that height is, as fixed by the contract, can only be determined by giving a proper construction to that instrument. It discloses that the parties thereto had theretofore agreed as to what was "the original height of the dam," but does not state to what height that dam had in the first instance been built. It is recited that Williams binds himself "to take down" the dam, as then constructed, "down to eight inches of the original height of the dam." The evident meaning of this stipulation was that Williams should (on a proper and timely request) "take down," or lower, the structure then standing, to a point within "eight inches of," or eight inches distant from, "the original height of the dam," so that it would be not more than eight inches higher than it was when first constructed. There is no intimation that

Thornton had any complaint to make of "the original height of the dam," and certain it is that Williams did not agree to lower the structure to that height. Had he been willing to do so, it would have been but a simple matter for the instrument to recite that the dam should be lowered to its original height, which had been previously ascertained and agreed on between the parties. It is true that a point eight inches below the original height of the dam would be within "eight inches of the original height of the dam," as well as would be a point eight inches above that height. But the writing stipulates that the standing structure shall be lowered, or taken "down to," a point "eight inches of" that which the parties had agreed was the point representing the height of the dam as previously constructed, and there is no hint that Williams undertook to lower his dam "to" the agreed distance of eight inches "of" its original height by commencing, not at the top of the structure, but at the line agreed on as the original height of the dam. In other words, it can not fairly be inferred from this writing that the intention of the parties was that Williams should reduce the height of his dam by taking it down "below and beyond" its original height a distance measuring "eight inches of" such height. Had such been the intention, the most natural way of expressing it would have been to simply state that the structure should be lowered to a point eight inches below the original height of the dam. The contract, as written, points irresistibly to the conclusion that the parties contemplated, not that any part of the original structure should be cut down, but only that a portion of its subsequent growth should be pruned in time of need. If we have given to the instrument its proper meaning, it follows that the charge of the court was more favorable to the plaintiff in error than he had any right to demand or expect, and that his exception is without merit.

2. After carefully reviewing the evidence, however, we have reached the conclusion that the motion for a new trial should have been granted, for the reason that the evidence, considered as a whole, demanded a finding in favor of the plaintiff of actual, rather than merely nominal, damages. He showed that the dam maintained by the defendant, even after it had been lowered by him a number of inches, backed water for a considerable distance on the land in question, and that in consequence the land was

rendered unfit for cultivation and crops planted thereon had been damaged and even totally destroyed.    The defendant undertook to establish his contention that his dam was no higher than the Williams dam, and backed no more water on the plaintiff's land than that dam and another erected in its place had always done. It is to be noted that this did not constitute a valid defense, in the absence of proof that the defendant's dam was not more than eight inches higher than the original height of the Williams dam, as agreed on by the parties to the contract above discussed.    Certain it is that this contract did not, in express terms, confer upon Williams any right to back water on Thornton's land, now belonging to the estate of Nuckolls.    On the contrary, the purpose of that agreement seems to have been to protect Thornton at all times from back water.    By that agreement he conceded the right of Williams to maintain his dam at a height eight inches above the point previously agreed on as the original height of the dam; but only in the event that the practical result of this concession was to give Williams a right to maintain a dam which actually backed water onto Thornton's land can it be said that the contract, by necessary implication, conferred any such privilege upon Williams.    What is the truth in regard to this matter was not brought out on the trial.    The defendant showed only that his father bought the Williams dam about the beginning of the year 1864, and in the following year erected a new dam after the same pattern and of the same height as that dam; that the height of this new dam remained unchanged until it was torn down by the defendant, and that the dam he is now maintaining is one half of an inch lower than that built by his father.    The "original height" of the Williams dam was not made to appear; much less the height which he and Thornton had agreed, before entering into the contract of April 2, 1860, was the original height of that dam.    The Williams dam may, for aught that the evidence discloses, have been in 1864, when bought by the defendant's father, very considerably higher than eight inches above its "original height," as agreed on, and therefore higher than Williams and his successors in title had a right at all times to keep it over the protest of Thornton or his successors in title.    It may be impossible, at this late day, to prove facts necessary to Anderson's defense; but it is nevertheless incumbent on him to show by what

right he subjects his neighbor's land to a servitude which, in the absence of a grant, express or implied, it does not owe and should not be called upon to bear.

The foregoing discussion disposes of all questions presented by the motion for a new trial which will have a practical bearing on the case when tried again; so it is unnecessary to deal specifically with each of the grounds of the motion, or to further extend this opinion.      *Judgment reversed.*    *All the Justices concur.*