FRANK HAIGH, Appellant, vs. JOHN T. LENFESTY et al. Appellees.

*Opinion filed February 19, 1909—Rehearing denied April 9, 1909.*

1. WATERS—*grant of right to build a dam construed.* A grant of the right to build a dam "not more than six feet in highest above the bed of the river," means a dam not more than six feet in height above the highest point of the river bed.

2. SAME—*when the right to overflow land by dam is not lost by mere non-user.* Where the right to overflow land by a dam is acquired by grant from the owner of the land, such right is not lost by mere non-user alone, but there must be also adverse possession for twenty years; and the proof in such cases must be positive.

3. SAME—*when new dam need not be built on site of old dam.* Where the grant of land for a mill site embraces the bed of a river and land on each side extending along the banks and does not fix the site of the dam, the erection of the first dam does not conclu-

sively establish the site of future dams, and a new dam may be built at any other point within the territorial limits of the grant.

4. SAME—*the height of a dam measures extent of water right.* Where the right to build a dam and overflow land is acquired by grant from the owner of the land, the height of the dam, when in good repair, fixes the extent of the right to the flow; and this right is not lost by the mere fact that the grantee has not at all times exercised his privilege to its full extent under the grant.

5. SAME—*when new dam may be built though it raises water higher than old dams.* A grant of the right to build a dam of certain height is a grant of the right to set back the water upon superior riparian lands to the extent they would be overflowed by a dam of such height; and where no prescription against such right has been acquired, a new dam may be maintained which will back the water to the extent authorized by the grant, even though, by reason of the tightness of the dam, the water is raised higher than it was by the old dams.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Kankakee county; the Hon. FRANK L. HOOPER, Judge, presiding.

This is an appeal from a decree of the circuit court of Kankakee county dismissing for want of equity a bill for injunction and other relief, brought by appellant against the appellees.

The bill alleges that appellant is the owner of one hundred and eighty-nine acres of farm land in Aroma township, adjoining the Kankakee river on the north side thereof; that appellees are the owners of a strip of land containing fourteen acres, lying on both sides of said river and immediately below that of appellant; that for more than thirty years there have been located on said lands of appellees a stone grist mill, flour mill, straw-board mill and other improvements; that said mills were operated by water furnished by a·dam constructed across the river in 1852, and that said dam remained on said premises until 1903 and backed the water up the river opposite the premises of appellant. The bill further alleges that in 1903 appellees con-

structed upon said premises another dam about fifty feet down the stream; that said dam was constructed at least twelve inches higher than the other dam and caused the water in the river to be raised to a greater height than it had ever been by the old dam. The bill further alleges that the building of said new dam has greatly damaged the lands of appellant; that it has ponded and retained the water permanently on a large portion of his farm at least twelve inches higher than it had been for more than twenty years prior to the erection of said new dam; that it destroyed the efficiency of his tile drainage, killed a grove of trees and injured the producing qualities of his land, thereby damaging appellant not less than $6000, besides $2000 for loss of crops, etc. The bill prays that appellees be decreed not to construct, maintain or operate any dam on said premises except at the same place and of the same height as said dam constructed prior to August, 1903, and that they be restrained from raising the water on appellant's land to any greater height than it had been raised and maintained for twenty years prior to August, 1903; that appellees be required to remove their newly constructed dam from the river.

The answer of appellees admits the building of the old dam in 1852 and the new dam in 1903, but denies that the new dam was built any higher than the old one had been erected and maintained for forty years; denies the water had been raised any higher on the lands of the appellant or that it backs up and injures his tile drainage and crops; avers that appellees have a right to erect a dam seven feet above the bed of the river, and that they have a right to back the water on appellant's premises to the full extent that a dam erected and maintained (at the location of the new dam) seven feet above the bed of the river would pond said lands of appellant, by virtue of said right having been conveyed to said appellees by the original owners of the premises of said appellant.

The cause was referred to the master to take proofs, and upon the coming in of his report the court entered a decree dismissing the bill for want of equity.

SMALL & BROCK, for appellant.

W. R. HUNTER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The material facts with reference to the construction of the dams are as follows: In July, 1850, A. M. Wylie bought of members of the Pottawattamie Indian Nation two sections of land on the Kankakee river, known as the Mesawkequa reservation. The fourteen acres now owned by appellees and the land owned by appellant were a part of said reservation and owned by said Wylie in 1852. February 7, 1852, Wylie and his wife deeded to A. and S. Wilber the fourteen acres now owned by the appellees. On the same day, as a part of the same transaction, Wylie executed and delivered to the said Wilbers the following agreement:

"Know all men by these presents, that I, Augustus M. Wylie, have sold and deeded to Alvin and Slocum Wilber certain lands at Show Bar Cross, on Kankakee river, for the purposes of building mills, machinery, etc., do agree, for purposes aforesaid, said Wilbers or assigns may build a dam across said stream not more than six feet in highest above the bed of the river, and that he, the said Augustus M. Wylie, his heirs or assigns, shall not charge, ask, demand or receive any pay for damages done to land, timber or property whatsoever by reason of watter raisin by said dam.

"In testimony whereof I have hereunto set my hand and seal this 7th day of February, 1852.

AUGUSTUS M. WYLIE. (Seal.)"

The deed and agreement were recorded.

The Wilbers commenced the erection of a six-foot dam on the tract purchased by them and finished the same in 1853, measuring the height from bed rock in the bed of the river at the abutments of the dam. In 1855 the appellee E. R. Beardsley and his brother purchased the property now

owned by appellees, with the dam completed thereon. He testifies that the bed of the river upon which the old dam was placed was at that time quite level, except at one point. The other appellees have since acquired their interests in the premises. The first dam was what was called a "crib dam." It was replaced in 1883 by a rafter dam on the same site, and we think the evidence shows that this second dam was of the same height as that erected by the Wilbers. Portions of this second dam were washed out at various times and replaced until 1903, when the dam in question was built about fifty feet below the old one. The present dam was built of wood upon a concrete base. These dams furnished the water power for the mills continuously, with a few slight interruptions, from 1853 to the trial of the case. Appellant purchased the farm in 1899 and moved upon it the same year. At that time about one hundred and twenty acres of the farm were tillable land and lay in the bottoms along the river. About seventy acres were broken, a portion being marshy and including bayous and an island. This land was used principally for pasture. At the east end of the farm a tile was laid about the year 1888, which emptied into a bayou near the river. In 1903 appellant put in about 560 rods of tile in the west part of the farm, which emptied into the river about 100 rods above the new dam. According to the appellant's evidence the outlet for this tile was based on the level of the river during the summer season as it existed prior to the construction of the new dam and was about eleven inches above said water level. It is clearly shown by the evidence that when the new dam was completed, in October, 1903, the water rose fifteen or twenty inches higher than it was before and that the increased depth has since been maintained; also that it backed up on the appellant's farm, covered the outlets of his tile, killed a grove of oak trees by continuously standing on the land, covered up about twenty-five acres of land, flooded the cellar of his house and otherwise damaged his farm.

Appellant contends that appellees have no right to pond or back the water on his land higher than it had been raised by the old dam for twenty years previous; that they have no right to build a dam at any place except on the site of the old one, or to so construct a dam at any place as to raise the water above it any higher than it was raised by the old dam. This position is based on the theory that whatever land the appellees were authorized to overflow by building the dam, if they failed for twenty years to exercise the right it was lost by non-user. Where the right to overflow land by a dam is acquired by grant from the owner it is not lost by non-user alone. (Angell on Water-courses,—7th ed.— sec. 252.) To defeat such a right based upon grant there must also be an actual adverse possession for twenty years. There must be not only an absolute denial of the right, but an enjoyment inconsistent with its existence. (*Kuecken* v. *Voltz*, 110 Ill. 264; *Illinois Central Railroad Co.* v. *Moore*, 160 id. 9; *Chandler* v. *Jamaica Pond Aqueduct Corporation*, 125 Mass. 544; *Clinton Gas Light Co.* v. *Fuller*, 170 id. 82; *State* v. *Suttle*, 115 N. C. 784; *Lindman* v. *Lindsey*, 69 Pa. St. 93.) It is not made clear by the evidence how much of appellant's land was overflowed by the new dam that had been free from overflow before its construction, or for how long a period consecutively it had been free from overflow before the new dam was built, or what was the nature of the user or character of the possession before that event. Neither is it made to appear what was the character of the land not affected by the old dam for a period of twenty years before the new dam was built but which was affected by the new dam. If appellant could acquire, by prescription, the right to prevent appellees from overflowing lands by the construction of a dam built in accordance with the grant from Wylie in 1852, the evidence in this case is insufficient to establish that right. In such cases the evidence must be clear, positive and unequivocal. *Zirngibl* v. *Calumet Dock Co.* 157 Ill. 430; *Davis* v. *Howard,*

172 id. 340; *Chicago and Northwestern Railway Co.* v. *Galt,* 133 id. 657.

The appellees are the owners of the bed of the river as well as the land on both sides. They have a right to erect a dam at any place they choose on their own land, and of any height, so long as they do not interfere with other owners' rights above or below them. The essential thing granted by Wylie's deed to the Wilbers was the right to overflow the upper lands by means of a dam not more than six feet above the bed of the river. Under this authority the Wilbers or their grantees had the right to set back the water by any kind of a dam constructed at any place on their land, provided, only, it did not exceed six feet in height above the bed of the river. The right to raise the water was an easement appurtenant to every part of the land, and if it became necessary, or only desirable and convenient, to erect a new dam, it was not necessary that it should be erected on the same spot as the old one. It might be built at any spot where the right granted could be most profitably or conveniently enjoyed. *Forbes* v. *Commonwealth,* 172 Mass. 289.

Appellant insists that under the Wylie grant the crest of the dam could not at any point be more than six feet above the bed of the river. We do not so construe the grant. The bed of the river is that part between the banks worn by the regular flow of the water. (Bouvier's Law Dict. (Rawle's ed.) 266; *City of Peoria* v. *Central Nat. Bank,* 224 Ill. 43.) In making the grant the grantor must have supposed the top of the dam would be substantially level, and "six feet in highest above the bed of the river" we construe to mean six feet above the highest point of the river bed. That it was so understood by the parties is manifest from the manner in which the various dams prior to the one now involved have been built and maintained, and the construction so manifested will be followed. Farnham

on Waters and Water Rights, sec. 556; *Waterman* v. *Johnson,* 13 Pick. 261.

The right of the appellees rests on a grant. They claim no prescription. Whatever right was granted appellees still have, for, as we have seen, the evidence fails to show a prescription against it. What, then, was the right granted? It was the right to set back the water upon the superior riparian lands to the extent that they would be overflowed by a dam six feet high above the highest part of the bed of the river on the grantee's land.

The height and capacity of a dam is the common instrument by which to measure the extent of the water right. (*Town* v. *Faulkner,* 56 N. H. 255.) The general rule is, that the height of the dam, when in good condition and repair, fixes the extent of the right to the flow. (Gould on Waters,—3d ed.—sec. 344; *Carlisle* v. *Cooper,* 21 N. J. Eq. 576.) That the grantee has not at all times exercised his privilege to its full extent under the grant does not affect his right thereunder, though in this respect a claim by grant differs from one by prescription. (*Lacy* v. *Arnett,* 33 Pa. 169.) The height of the dam as fixed by the grant herein settles the right to maintain the dam at that height, regardless of the extent to which the water has been held back and the land overflowed by the erection of the former dams. (*Nuckolls* v. *Anderson,* 120 Ga. 677; *Albee* v. *Hayden,* 25 Minn. 267; *Hall* v. *Turner,* 110 N. C. 292; *Prentiss* v. *Wood,* 118 Mass. 589; *Ludlow Manf. Co.* v. *Indian Orchard Co.* 177 id. 61.) Hence the evidence as to the flooding of the lands of appellant during the time the old dams were in use, as compared with the flooding of the lands since the new dam was erected, cannot control in deciding the height that the dam can be legally constructed under said grant.

Our attention has been called to *Powell* v. *Lash,* 64 N. C. 456, *Morris* v. *Commander,* 3 Ired. L. 510, *Griffin* v. *Bartlett,* 55 N. H. 119, *Stiles* v. *Hooker,* 7 Cow. 266, *Mertz* v.

*Dorney,* 25 Pa. 519, *Brown* v. *Bush,* 45 id. 61, *Turner* v. *Hart,* 71 Mich. 128, and other cases of like nature, which hold that the extent of the amount of backwater, and not the height of the dam, is the test. These cases are not in point, for in all of them, and in others that have been cited, this rule has been laid down either where the right was obtained by prescription and not by grant, or else where the height of the dam under the grant had been limited by adverse user.

Has the right granted to appellees been exceeded? The new dam has raised the normal level of the water fifteen or twenty inches—perhaps more. But the evidence shows that the old dam was leaky; that from a fourth to a third of the water went through it, and that in the summer time the water was several inches below its crest. The new dam is tight. None of the water escapes through it, and at the time of the trial, in May, 1907, water had been running over the top every day since it was completed, October 3, 1903. The bottom of appellant's tile, which was laid in 1903 and was then eleven inches above the level of the water in the summer season, was below the crest of the old dam. The building of a new and tight dam and the impounding of the large quantity of water which escaped through the old dam naturally raised the level of the stream, not only to the height of the dam, but apparently several inches higher, for several inches of water have been going over the dam ever since its completion. The injury occasioned by such raising of the water level is not, however, one for which appellees are liable if the burden imposed upon appellant's land is no greater than that authorized by Wylie, his grantor.

That the dam first erected was within the right granted is not denied. No complaint appears to have been made in regard to it. The present dam is substantially on the same site, fifty feet below. It is true that the new dam is seven feet above the present bed of the river, but the evidence

tends to show that the bed has been deepened by the erosion of the stream and the quarrying of rock from it. Considerable evidence was introduced to show that the crest of the new dam was higher than the crest of the old dam, measured from a common datum. The crest of the new dam was level while that of the old dam was irregular. Appellant's measurements were taken in June, 1904, eight months after the new dam began to be used. The evidence shows that the top of the dam was continually being worn down by the friction of the water, ice and other material passing over it. The utmost claim that can be made for appellant is, that the crest of the new dam is between four and five inches higher than the crest of the old dam. But this is uncertain, for evidence of other measurements taken shows a less difference, and some witnesses testified that when the new dam was completed and closed and the water rose behind it, parts of the crest of the old dam were still visible above the water when the water began to run over the new dam.

This cause was heard in open court. The chancellor saw and heard the witnesses. His finding ought not to be disturbed unless, in view of all the evidence, we are convinced that it is wrong. (*Amos* v. *American Trust and Savings Bank,* 221 Ill. 100; *Widmayer* v. *Davis,* 231 id. 42; *Dowie* v. *Driscoll,* 203 id. 480.) We cannot say that the evidence shows such a clear, certain and definite violation of appellant's rights by the erection of the dam that a court of equity should interpose by injunction, as prayed for in the bill.

The decree of the circuit court must therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE FARMER, dissenting.