### THEW et ux. v. LOWER COLORADO RIVER AUTHORITY.

#### No. 10152.

Court of Civil Appeals of Texas. Austin.
June 24, 1953.

Rehearing Denied July 15, 1953.

940

James R. Meyers, Coleman Gay, Austin, for appellants.

Mac Umstattd, W. S. Gideon, Austin, for appellee.

HUGHES, Justice.

The Lower Colorado River Authority sued appellants Claud W. Thew and wife, Verna C. Thew, to quiet title to an easement of water flowage over 4.21 acres of land belonging to appellants.

The court sustained' appellee's motion for summary judgment and rendered judgment establishing and quieting its title to the flowage easement.

Appellants have several points which raise two principal contentions, the first being that under the agreed facts appellee has not established the easement which it claims and, second, that genuine issues of fact were presented which prevented the rendition of a summary judgment. These asserted fact issues relate to the loss of the easement, if established, by abandonment and estoppel. We will, therefore, first discuss the validity and scope of the easement in suit.

The facts relevant to this easement were stipulated.

In 1905, remote grantors of appellants executed and delivered instruments in the following form:

"This indenture made and entered into by and between A. C. Lacy & Wife, Mary V. Lacy, parties of the first part and the Marble Falls Water and Power Company party of the second part, all of aforesaid County and State.

"Witnesseth: That for and in consideration of the sum of ———— Dollar Paid to the party of the first part by the party of the second part, the party of the first part hereby bargains contract—and agrees with the party of the second part its successors and assigns, that if said party of the second part, its successors or assigns, shall damage any lands owned by the parties of the first part their heirs and assigns, lying on and adjacent to the Colorado river above the town of Marble Falls, Burnet County, State of Texas, out of and part of the Martin Peske Survey, by constructing a dam on the shoals at Marble Falls or other improvements on its property at Marble Falls, Texas, at any future time, causing any of the said land of the party of the first part to become unfit for agrucultural purposes, by reason of back water caused by the construction of said dam or other improvements that the said party of the first part will and they hereby bind themselves to accept One Dollar per acre for all such land that may become submerged, soggy or otherwise damaged by reason of such back water, the title however to such land to remain in the parties of the first part their heirs, legal representatives or assigns and the said One Dollar per acre, when paid as aforesaid shall forever release the said party of the second part, its successors or assigns, from any and all damages occasioned by reason of such dam or other improvements aforementioned or the back water as above stated.

"Said dam not to exceed twelve feet in height above upper fall.

"The party of the second part, for and in consideration of the premises and acts and things to be done and performed by the parties of the first part as above set fourth, hereby binds itself, its successors and assigns that any time it may construct such dam or im-

provements above mentioned and such dam or improvements cause, the, back water of river to submerge or otherwise damage the lands of the party of the first part, that it, the said party of the second part, its successors or assigns, will pay to the parties of the first part one ——— per acre for such lands as are submerged or damaged by reason of said back water which one dollar per acre shall be in full and final settlement of any and all claims for damages to the lands of the party of the first part their heirs or assigns by reason of the back water as aforesaid."

Lower Colorado River Authority has succeeded to all unexpended rights and benefits conferred by such instruments upon the Marble Falls Water and Power Company.

In 1925–6 a dam was built under a permit issued by the State Board of Water Engineers to G. L. Jones who at such time was the owner of such flowage rights over appellants' lands as were conferred by the 1905 agreements. This dam was built on top of the upper falls or natural dam of the Marble Falls. It was three feet in height and when full of water it did not cover the lands in suit. Water was impounded by this dam until July, 1951, when it was destroyed.

In 1951, Lower Colorado River Authority completed a dam about two miles downstream from the 1926 dam which is located on the shallow waters of the Colorado River about 5000 feet distant from the corporate limits of the City of Marble Falls, said shallow waters beginning at the upper fall on the river (this fall is adjacent to the city limits) and extending to and below the point where the 1951 dam is located.

This dam when full of water will inundate appellants' 4.21 acres.

This dam (1951) was built upon land which neither the Marble Falls Water and Power Company nor Lower Colorado River Authority owned or had any claim to in 1905 when the flowage agreements were made.

It was also stipulated that a dam located on the shoals of the Colorado River at Marble Falls 12 feet in height above the upper fall would result in more water being on the land of appellants than is on and will be on the land of appellants as the result of the new (1951) Marble Falls dam.

The high points of appellants' argument, as taken from their brief, are that (1) the 1905 instrument *permitted* the construction of only one dam (2) the 1905 instrument *permitted* the construction of a dam only on property then owned by Marble Falls Water and Power Company, and (3) the 1905 instrument *permitted* the construction of a dam only on the shoals at Marble Falls.

■ Our problem is to construe the 1905 instrument and our duty is to fairly construe it in accordance with established legal principles. The rules of construction applicable here are that the instrument must, consistent with its language, be most strongly construed against the grantor and most favorably to the grantee and construed so as to pass to grantee the greatest possible estate.

Our approach to the solution of this problem is to consider the situation of the parties to the 1905 instrument at the time of its execution.

It is evident that the grantee had in contemplation the construction of a dam on the shoals at Marble Falls and that the grantors owned some river land which might be damaged if the dam were built. The prudent and businesslike thing for the parties to do was to eliminate, in the beginning, anticipated trouble. This could best be accomplished, so it seemed, by execution of the 1905 agreement.

■ Appellants' basic misconception of the import of this agreement is, we believe, reflected by their specific arguments, noted above, which emphasize *permission* by grantors for the Water Company to erect a dam. Grantors had no authority to grant the Water Company permission to construct a dam. It seems apparent to us that this was not the essence of their agreement for it will not be presumed that a person will grant that which he does not have the right to grant.

What was it, then, that grantors had to sell which grantee needed to acquire in furtherance of its purpose to build a dam on the shoals at Marble Falls.

What grantee needed was assurance that it or its assigns could at any time in the future flood or damage grantors' land at a price it was willing to pay.

Grantors had the authority to give this assurance.

We should, therefore, distinguish language in the instrument which describe or recite the purposes or occasion for its execution from the language which conferred upon grantee rights and privileges which the grantors had the authority to convey. So read and construed the 1905 instrument conveys to the grantee, its successors and assigns, a perpetual right to overflow appellants' land by a dam built on the shoals at Marble Falls, such dam not to exceed 12 feet in height, upon payment of $1 per acre.

The 1951 dam is such a dam and the money has been tendered. It is true that this is not the only dam which has been so built and it is true that this dam is not built on the river adjacent to the corporate limits of Marble Falls. The agreement does not provide that flowage rights should cease after the construction of one dam nor that the corporate limits of Marble Falls had anything to do with the location of the dam. We cannot rewrite the instrument and insert these restrictions.

Appellants have cited no cases involving the construction of instruments conveying flowage rights. While appellee cites numerous persuasive authorities[1] on this question we find the facts in those cases to be so dissimilar as not to justify their review.

Appellants make the further argument concerning the nature of the rights conveyed by the 1905 instrument in which they concede that the interest created and conveyed thereby is either an easement appurtenant or an easement in gross, their contention being that if it constitutes the former then the easement is appurtenant only to the land which the grantee owned in 1905 and if the latter that the easement is nonassignable.

The interests created and conveyed by the 1905 instrument were clearly assignable. The instrument itself so provided and there is no statute or rule of public policy which prohibits the assignment of interests and rights of the nature created by such instrument. Art. 569, V.A.C.S., Assignments, 5 Tex.Jur.; Houston & T. C. Ry. Co. v. Cluck, 31 Tex.Civ.App. 211, 72 S.W. 83 (writ ref.); Lakeview Land Co. v. San Antonio Traction Co., 95 Tex. 252, 66 S.W. 766.

The contention that the rights created by the 1905 instrument are exclusively appurtenant to the lands then owned by the grantee has been answered against appellants by the construction which we have previously given such instrument.

The question remains as to whether the trial court erred in granting summary judgment.

Appellants' first amended answer and cross action was filed November 29, 1952. This pleading contained the allegation that if appellee had the rights claimed by it under the 1905 instruments "such right was abandoned by Marble Falls Water & Power Company and its successors in title long prior to the institution of this suit, said abandonment having occurred prior to the year 1930, and that by virtue of such abandonment neither Marble Falls Water & Power Company nor any other person, including the plaintiff, has any right to flood defendants' land under the purported agreements described in Plaintiff's Original Petition."

This pleading further averred that appellee is estopped to assert any claimed rights under the 1905 agreements because appellants "after their purchase of the property * * * were approached by a representative of the plaintiff with regard

1. Barber v. Nye, 65 N.Y. 211, Bradley v. Warner, 21 R.I. 36, 41 A. 564, Hemmis v. Consolidated Water Power & Paper Company, 173 Wis. 518, 181 N.W. 743, Forbes v. Commonwealth, 172 Mass. 289, 52 N.E. 511, Haigh v. Lenfesty, 239 Ill. 227, 87 N.E. 962, Kilgore v. Hascall, 21 Mich. 502, Glidden v. Beaverton Power Company, 223 Mich. 383, 193 N.W. 862, and Van Horne v. Trousdale, Tex.Civ.App., 10 S.W.2d 147 (El Paso).

to the proposed flooding of said land by the erection of a dam, which dam was subsequently built and which caused the damage to defendants' land herein set out; that said duly authorized representative of the plaintiff negotiated with these defendants for the purchase of the land to be flooded or an easement thereon, and thereby induced the defendants to believe that plaintiff did not claim any right to flood their said land except as such right might be acquired from these defendants or by the exercise of the power of eminent domain, and that in reliance upon such conversations with plaintiff's representative defendant expended further money in connection with their said property and the business they were conducting thereon and otherwise changed their position to their detriment, by reason of which facts the plaintiff is estopped to assert that it now claims the right to flood said land by virtue of the purported agreements alleged in its petition."

The motion for summary judgment was filed December 6, 1952, and was based solely on the stipulations of the parties and the instruments referred to in such stipulations. No affidavits or other evidence was offered by any party. The motion did not question the adequacy of the pleadings of appellants.[2]

We have carefully read the stipulations and we find nothing in them which expressly negatives appellants' pleading of abandonment or estoppel.

▮▮ As to abandonment it may be inferred from the record that this plea is based solely on nonuse or partial nonuse of the rights conferred by the 1905 instrument and, as appellee argues, such fact being insufficient to support a plea of abandonment no genuine fact issue is raised. However this may be there is no negation by inference or otherwise of appellants' plea of estoppel.

Appellee contends that since appellants did not bolster their plea of estoppel by affidavit or otherwise after its motion for summary judgment was filed that no fact

issue of estoppel is presented since pleadings alone are not sufficient for that purpose and in support of such contention cites Rolfe v. Swearingen, Tex.Civ.App., 241 S.W.2d 236 (San Antonio, writ ref., n. r. e.), Reese v. Davitte, Tex.Civ.App., 255 S.W.2d 1015 (Fort Worth, writ dism.), and McFarland v. Connally, Tex.Civ.App., 252 S.W.2d 486 (Fort Worth).

Neither of these cases supports the argument of appellee.

In Rolfe v. Swearingen [241 S.W.2d 239], we find that

"Appellees' showing was supported by sworn factual statements sufficient upon their face to establish a complete defense to everything appellants alleged. The verity of those sworn statements was in no way challenged by counter-affidavits or other sworn statements. In the hearing to locate the dispute about genuine and material facts, all facts stood undisputed, unchallenged, uncontroverted."

In Reese v. Davitte the plaintiff sued to cancel her deed and contract on the ground of mental incapacity. Defendants filed a sworn motion for summary judgment in which they denied that plaintiff was mentally deranged. Plaintiff did not rebut this by sworn pleading or, insofar as the record disclosed, by any proof of any character.

In McFarland v. Connally the Court sustained a motion for summary judgment for defendant on the ground that the plaintiff's petition showed on its face that the cause of action asserted was barred by the two-year statutes of limitations. The Court also said: "The action of the trial court in granting summary judgment must be upheld for the reason there has been brought forward with this appeal no statement of facts. The judgment reveals that there were introduced in evidence depositions and affidavits, all of which were considered by the court before making his ruling. Those facts not being before us, it is not possible for us to say that the court erred in holding that the appellant presented no fact issues." [252 S.W.2d 488]

2. Under such circumstance the sufficiency of the pleading is assumed. Statham v.

City of Tyler, Tex.Civ.App., 257 S.W. 2d 742 (Texarkana).

We thoroughly agree with the statement by Judge Robt. W. Stayton, in 29 Texas Law Review, page 688, that, in a summary judgment proceedings "mere pleadings do not show that there is a genuine issue of fact, and thus prevent summary judgment" when applied, as the Judge necessarily implied, to the party who is resisting a motion for summary judgment which motion is properly supported by evidence or proof of an accepted nature sustaining all material allegations of the moving party and negativing all material allegations of the opposing party.

Since appellee did not negative in any manner appellants' plea of estoppel appellants were not under any duty, on appellee's motion for summary judgment, to offer any character of proof in support of such plea.

It follows that the summary judgment was improperly granted.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.