GEORGE McARTHUR AND OTHERS vs. GEORGE MORGAN
AND OTHERS.

Petitions under the flowage act are to be served by citation, in the same
way that bills in equity were served before the passage of the practice
act.

Evidence is not admissible against a petition under the flowage act, that
the petitioners are pecuniarily unable to avail themselves of the right
sought, if it should be granted.

It is no objection to such a petition, that the petitioners hold a perpetual
license, upon the payment of an annual rent and under certain limita-
tions, to flow the land of one of the respondents, and that, by the grant-
ing of the petition, they would acquire the right, for compensation
prepaid, to impose upon the land a permanent easement, free from the
limitations of the license.

Where one of the respondents, eight years before the hearing upon such a
petition, purchased a mill-site, now sought to be flowed, on which he
then intended to build a mill, but towards which he had done nothing,
it was held to be a question of fact for the committee whether that intent
still existed or had been abandoned.

Where a committee has left undecided certain questions of fact on which
evidence has been received by them, it is not the proper course for the
court to hear evidence and decide the questions, but the report should
be re-committed for a further finding by the committee upon the evidence
already received.

PETITION under the flowage act; brought to the Superior
Court. Referred to a committee; report by the committee
in favor of the petitioners; remonstrance against the accept-
ance of the report; remonstrance overruled and petition
granted; (Sanford, J.) Motion for a new trial and motion
in error by the respondents. The case is sufficiently stated
in the opinion.

S. Tweedy, with whom was H. Scott, in support of the
motion.

A. H. Averill, contra.

PARDEE, J. This is a petition under the flowage act.
The petitioners are owners of land through which runs
a stream, and have a mill thereon; their title is derived

through sundry conveyances from Samuel Morris. The respondents severally own land above them; on that owned by George Morgan there was once a mill and now is a pond; their title is derived through sundry conveyances from Caleb Benedict. In 1831 Benedict granted to Morris, and to his heirs and assigns forever, for an annual rent, license to maintain a dam, and carry the water thus detained to the grantee's mill by a canal excavated on the land of the grantor; the water to be drawn from the east side of the stream, at or near the grantor's saw-mill, and in such manner as not to damage it; the license to continue as long as the rent should be paid, unless the licensee should give three months notice of his desire to terminate it and pay the damages resulting from the excavation of the canal. The petitioners are now drawing water under it. They propose to erect upon their own land a dam of the same elevation as that of the one which detains the water now drawn to their mill; and under the flowage act have brought their petition to the Superior Court for leave to submerge the dam now on the land of Morgan.

The petition was referred to a committee for a finding of facts; a report was made; the respondents remonstrated against the acceptance thereof; upon hearing, the court determined that the remonstrance was insufficient, overruled it, accepted the report, and granted the petition. The respondents filed motions for a new trial and in error.

By statute, (Gen. Statutes, p. 472, sec. 1,) flowage petitions are to be served as petitions in equity then were; that is, by citation. Gen. Statutes, p. 396, sec. 1. The practice act, which took effect January 1st, 1880, provides (section 20,) that "mesne process in civil actions shall be by writ of summons or attachment." The respondents insisted that this act put an end to the service of flowage petitions by citation, that inasmuch as the petition in this case was served as a citation the service was without authority of law, and that it was the duty of the court to erase it from its docket. This motion was properly denied. The practice act, section 32, provides that section 20 shall not affect

flowage petitions. Moreover, the 29th section of the practice act, mentioning by number and page the sections of title 19 of the General Statutes which it repeals, does not include section 1, page 472, which permits the service of flowage petitions by citation. The court had jurisdiction of the cause.

The court also properly confirmed the action of the committee in refusing to permit the respondents to prove that the petitioners were insolvent and pecuniarily unable to avail themselves of a decree granting their petition. The flowage act does not, and therefore the court cannot, require these petitioners either to prove or guarantee their ability to complete that which they ask leave to commence. Moreover, as a condition precedent to the taking of the land, the act requires them to pay these respondents not only its full value, but in addition, by way of gratuity, one half as much more. If their land is not taken they suffer no loss; if it is, they receive payment and the gratuity. As a matter of protection it would seem to be unnecessary that the law should concern itself farther in their behalf.

The petitioners are licensees of the privilege of flowing the land of one of the respondents, and of drawing water thence to their mill under limitations; this privilege to continue as long as they pay the rent reserved and observe certain stipulations. If their petition is granted it will be possible for them, for compensation previously paid, to impose upon such land of the respondents as shall be specified in the decree of the court a permanent easement, free from the limitations attendant upon, and of larger measure than, that maintained under the license—practically to become the owners of the land submerged, and thus add to the power and value of their site. And it being the purpose of the flowage act to furnish opportunity for and inducement to the speedy and exhaustive use of all available water in the state, if under it the petitioners can convert this possibility into a result accomplished, they are not barred from availing themselves of its provisions to secure the greater privilege because they have the less; not even

if they had purchased the less of the respondents, unless when making such purchase, by way of payment therefor, wholly or in part, they had intentionally bound themselves not to attempt to secure the greater as against them. With this exception, every petitioner who brings himself within the terms of the act may, by means of it, secure for himself the largest possible right to the use of a stream, notwithstanding the fact that he is in possession and use of a lesser one. And Mr. Morgan is not, by reason of the fact that he is entitled to receive rent from the petitioners as long as they choose to avail themselves of this lesser right, in such use of a mill site upon his land as will protect it from the operation of the act as against them.

It being admitted that in 1872 Morgan purchased a site on which there had once stood a saw-mill with intent to use the power there available, and proven that at the hearing in 1880 he had done nothing to carry that intent into execution, it became necessary for the committee to determine as a fact whether he then held or had abandoned that intent. The question as to what a man intends to do is always one of fact; and proof of an intention in 1872 did not as a matter of law force upon the committee the conclusion that it existed in 1880. Leaving the proof in that state the petitioners exposed themselves to a finding as a fact that it continued; Morgan exposed himself to a finding as a fact that the intent existing and susceptible of being put in execution in 1872, of the existence of which thereafter there had been no visible manifestation up to 1880, had been abandoned. To say as a matter of law that if the owner once resolves to use his mill site, he thereby protects it during his ownership from the operation of the flowage act, although he makes no use of it, is to nullify that act.

The court did not err in accepting the finding of the committee that in 1880 George Morgan had no intention to use the power available upon the premises purchased by him in 1872.

In his answer is an averment that before the bringing of the petition he had commenced the erection of a dam and

mill upon his land, and upon the hearing he introduced evidence tending to prove it. The committee in their report make no special mention either of this averment or this evidence. In the remonstrance he complained of this omission as a failure to perform their duty, and asked the court to re-commit to them the report with instructions to make good the defect. This the court refused to do. The averment is that he "originally purchased his said lands with a view to utilize the water power thereon, * * and still intends to erect a mill * * and had begun the construction of said mill." As there is no suggestion here of more than one mill site upon the land, and as the record does not make certain that he offered evidence touching more than one, the court might well assume the finding by the committee to be that at the time of the hearing he had. no intention to use power anywhere upon his premises. Thus interpreted it is a distinct finding that the averment was not proven, and renders quite unnecessary any special finding as to whether the proposed dam would or would not injure any possible site on his land.

The respondents asked the court to determine the questions of fact which they said the committee had left undetermined, and in so doing to permit them to introduce evidence in addition to that introduced by them upon the same points before the committee. The court denied both requests. In this denial there is no error. As to the first, we have said that upon a proper interpretation of the finding there is no defect in it. Secondly, if there had been, the committee heard and weighed evidence for the court and reported to it the resultant facts. Having a day before the committee the respondents had their day in court. If the committee neglected to report their conclusion from evidence upon a given point, they would have an opportunity to add such conclusion; but only upon the evidence already heard.

There is no error, and a new trial is not advised.

In this opinion the other judges concurred.