STATE v. D. D. SUTTLE.

*Indictment for Destroying Milldam—Reservation in Deed—*
*Right to Raise Milldam—Easement—Adverse Possession—*
*Nuisance.*

1. Where, in a deed conveying land, the grantor reserves the right to
     raise and rebuild a milldam on a stream below the land so granted,
     the reservation is of the right to raise as well as to rebuild the dam.
2. Where a grantor of land reserves an easement therein, and subsequent
     conveyances do not mention such reservation, the easement is not
     affected by such omission.
3. Where a grantor of land reserves the right to back water upon it from
     his milldam, the mere cultivation of the soil by the grantee is not
     an act of possession adverse to the owner of the easement.
4. The right to an easement may be acquired or lost by an adverse user,
     but in either case the user must be of such a nature as to expose the
     claimant under it to an action at any time for twenty years.
5. The mere erection of the frame of a dam which, when completed by
     further work thereon, will pond water back and create a nuisance,
     does not of itself constitute a nuisance before injury ensues.

This was an indictment under section 1087 of *The Code*,

charging the defendant with cutting away and destroying a certain milldam the property of John Hildebrand, tried in the Criminal Court of BUNCOMBE County before *Jones, J.*

The defendant pleaded not guilty. The counsel contended, among other things, that if he did destroy so much of the dam as would bring it down to the height of the original dam before Hildebrand rebuilt and raised it, he did it in the exercise of his right to abate the public nuisance. The prosecutor conveyed a tract of land to three persons in 1886 by deed containing the following clause: "Reserving and excepting to the parties of the first part, their heirs and assigns, the perpetual right and privilege of backing water from their milldam on the land herein conveyed, and of raising and rebuilding the dam, in case it washed away, at their pleasure, and all without cost, charge or expense to said parties of the first part, their heirs and assigns, on account of land damaged thereby or on any account; the parties of the second part, their heirs and assigns, being allowed to take all the ice that may be in the pond, and the right also of hauling out the mud that may accumulate in said pond."

On June 18, 1891, the said J. R., M. J. and R. H. Zachary conveyed the said seventy-three acres of land to D. Augusta Bean, and said Bean, on June 8, 1892, conveyed the said land to the defendant D. D. Suttle. Neither of the two last mentioned deeds contained the provision above quoted from the deed of Hildebrand and wife to the Zacharys.

There was evidence on the behalf of the defendant tending to show that the Hildebrands, in raising and rebuilding the said milldam, raised it to a height greater, by from four to six feet, than it was at the time of the conveyance by Hildebrand and wife to the Zacharys, or had been at any time between said conveyance and said raising and rebuilding. There was also evidence tending to show that the defendant did not cut the dam away so as to make it lower than it was when said Hildebrand and wife conveyed the

115—50

land on which the dam was situated to said Zacharys, but
the dam was left by the defendant higher by one foot than
it was when said last mentioned conveyance was made, or
had been at any time between the execution of said last men-
tioned conveyance and the time of raising and rebuilding
said dam.   There was also evidence tending to show that said
Hildebrand had neglected said milldam—had permitted the
dam to fill to a depth of five or six feet with mud, and the
woodwork to go to decay and ruin.   There was evidence to
show that the wheel to be turned by the water from said dam
was an overshot wheel, about twenty-three feet in diameter;
was situated __ yards below said dam; had not been changed
from the place where it was originally fixed about twelve
years ago, but had sunk or settled down about one foot.   It
was also in evidence that after the defendant had cut away
the portion of the top of the woodwork of the dam, the
water stood in the dam four feet above the top of the wheel.

His Honor charged the jury, among other things, as fol-
lows:

"That the reservation in the deed gave to Hildebrand
the following rights: If the dam washed away he had the
right to rebuild it, and in doing so he had the right to build
it to a height sufficient and necessary to enable him to use
the water of the pond for the purposes of running his mill
and machinery, and if in so building he did build it or raise
it higher than it was at the date of the deed containing the
reservation, and such increased height was necessary for the
purpose just mentioned, he had a right to do so, and if the
water backed on the land further than it was at the date of
said deed, this gave the defendant no right to destroy the
dam, or to even cut it down to the original height.   The
reservation did not give Hildebrand the right to raise the
dam, unless it was necessary for the purposes already men-
tioned, and if he raised the dam to a greater height than it
was at the date of the deed unnecessarily, and in consequence
thereof the land of Suttle was damaged, then Suttle had the

right to cut the dam down to the original height, but no lower, and you could not convict him. The question is not whether, at the time the defendant cut the dam, the water was higher than it was four years ago, but whether it was higher than it was at the date of the deed from Hildebrand to Suttle, to wit, September 16, 1886. He had a right to rebuild it to such a height as was necessary for the purpose of running that mill. If it was necessary for him to raise it higher than it was at the date of that deed, he had that right, and if in consequence the water backed on Suttle's land, there is a provision in this reservation that he should do this without damage or loss to himself, and Suttle had no right to go there and cut it down. On the other hand, this right in Hildebrand was one of necessity, and he had no right to raise the dam unnecessarily, or to raise it to any height he might please, but only in the way and for the purposes that I have described to you. If he went there and raised it in order to injure Suttle, or to annoy him and to pond his land, then Suttle would have the right to go there and cut it down.

"Now there is another thing you must remember, and that is that you must fix the date in your mind. A good many of the witnesses said they were familiar with the heights of that water four and six years ago, and that after Hildebrand rebuilt the dam it was higher than it was then. The date that you must keep in your mind is the date of the deed in 1886, and the question before you is not whether it was higher than it was in 1889 or 1890, but whether it was higher than it was in 1886. The question is not whether, when the defendant cut the dam, it was higher than it was three or four years ago, but whether it was higher at that time than it was in 1886."

There were various exceptions to the charge by the defendant. There was a verdict of guilty, and from the judgment thereon the defendant appealed.

*Attorney General* and *Mr. Locke Craige*, for State.
No counsel, *contra*.

AVERY, J.: The right was reserved in the original deed in clear and unmistakable terms to raise as well as to rebuild the dam. Those who took title to the land subject to the servitude had no just ground to complain of the exercise of this right, and were in no better condition before the Court when indicted under section 1087 of *The Code* than any other person who ventures to take the law in his own hands and seeks redress for an imaginary injury by destroying another's milldam. When the prosecutor reserved the right of raising as well as rebuilding the dam, we cannot agree that both words were used to mean the same thing, because, giving to the language its ordinary import, the parties obviously had in view the possibility that the grantor, his heirs or assigns, might deem it best for their own interests to do just what it appears was done by them, in case the old dam should be swept away.

It seems to us that the defendant has no ground to object to the construction placed upon this clause by the Court, nor of the instruction as to the application of the facts to it. It was suggested that the defendant, who holds through the *mesne* conveyances from the grantees under the deed from Hildebrand, in neither of which is any mention made of the reservation by Hildebrand, may hold discharged of the servitude. But Hildebrand, having reserved the easement, the right to it could not be divested out of him except by a conveyance or by adverse possession for the necessary period. The mere cultivation of the soil being no interference with the enjoyment or right to use the easement, does not expose the occupant to an action of trespass by the dominant owner, and therefore does not constitute a possession adverse to him. *Osborne* v. *Johnston*, 65 N. C., 22; *Boomer* v. *Gibbs*, 114 N. C., 76; *Hamilton* v. *Icard*, *ibid*, 532. The right to an

easement may be acquired by prescription or lost by an adverse user, but in either case the user must be of such a nature as to expose the claimant under it to an action at any time for twenty years. *Emry* v. *R. R.*, 102 N. C., 209.

The owner of the agricultural interests may become a trespasser as to the reserved mineral interest, but only by engaging in mining for the mineral or minerals reserved (*Ashmore* v. *Taylor*, 12 Atl. Rep., 74), and so he can, by direct interference, indicating an unequivocal claim to the easement as distinguished from the right to cultivate, subject himself to liability to the dominant owner of the easement to build or raise a dam.

The defendant had no reasonable ground to object to the instruction that his right was not infringed unless the water was actually ponded back further than Hildebrand was authorized to throw it back. The mere erection of the frame of a dam, which by further work in putting on or grooving plank or boards, would so pond the water back and create a nuisance, does not constitute a nuisance before any injury ensues.

We deem it unnecessary to mention in detail the several assignments of error. What we have said meets the reason of all the exceptions, and therefore we think that the judgment should be                     Affirmed.