Swain vs. Weber and Reulet.

---

## No. 13,761.

### MRS. LAVINIA SWAIN AND ANDREW G. SWAIN VS. MRS. ALOYSIA WEBER AND AUGUSTIN REULET.

#### SYLLABUS.

Servitude of drain is due the upper estate. It was located more than twenty years, in accordance with a written agreement.

Proceedings *res inter alios acta,* will not be held to prejudice the rights of one not a party.

A servitude of drain will not be considered abandoned unless it is manifest that its abandonment was intended by parties in interest.

The time to ground prescription will not begin to run before it is made evident that from the time pleaded, the servitude was not exercised at all. Failure to sustain a drain properly, on the part of all concerned, is not considered as an abandonment of one's rights if the right continues to be of some use, even though limited.

Concerning plaintiff's and appellee's motion to amend the judgment, her right to damages is not made evident.

With reference to the attorney's fees, no attempt having been made to prove their value in the District Court, they are not considered on appeal.

APPEAL from the Twenty-First Judicial District, Parish of Iberville—*Talbot, J.*

*Benjamin Rice Forman,* for Plaintiffs, Appellees.

*Hebert & Hebert,* for Defendants, Appellants.

The opinion of the court was delivered by BREAUX, J.

On application for rehearing by BREAUX, J.

BREAUX, J. Plaintiff's action is for a servitude of drain in favor of her property and due by the Trinity plantation which is owned by the defendants. The plaintiff's land is known as the Bowling Green tract and was a part of a plantation known as the Live Oak place.

It appears that Live Oak was owned from 1873 to 1880 by Dickinson and Gay. Afterwards it became the property of Ed. J. Gay, plaintiff's vendor. On the south this plantation was bounded by the Trinity plantation, which is owned by the defendants.

In 1873, George W. Campbell, the owner of Trinity on the one hand, and Charles H. Dickinson and Andrew H. Gay, owners of Live Oak on the other, entered into articles of agreement by which they bound themselves to clean out the canal, now in controversy, on the line between Live Oak and Trinity. This canal, it appears, entered upon and crossed Trinity and "emptied its waters into a main canal running through from front to rear." Each of the contracting parties was to pay half the expense of this work. It was, also, agreed that a designated bayou was to remain open until the canal above mentioned "shall be cleaned and made efficient to carry off the water collected and flowing through the bayou at the point the canal intersects the bayou."

The owner of Trinity agreed to close this bayou whenever the owners of Live Oak became satisfied that the canal was a sufficient drain. The right to close, as just stated, as we understand, was made subservient to the will of the owners of Live Oak. But plaintiff bases her action principally upon the stipulation contained in a deed of sale in which the late Edward J. Gay became plaintiff's vendor. This stipulation sets forth that the right to a canal along the upper line of lot No. 8 (the Bowling Green place), therein sold, shall remain in force for the benefit of the other tracts of Live Oak plantation and the owners of the front land of Live Oak were to have the right to enter upon the canal, clean it up, and keep it open; that if the purchaser or future owner of lot No. 8 should use the canal for drainage, she and they would join in

keeping the canal open and in order. The parties also agreed that the agreement of August 22, 1873, to which we have before referred, between the owners of these plantations, shall always remain in full force. The plaintiff, it is stated in this deed, agreed to contribute her *pro rata,* based on the number of acres she bought with reference to the remaining portion of the plantation, to maintain the canal so as to drain the adjoining Live Oak and Trinity places—a part of the former place being now owned by plaintiff.

Plaintiff contends that, in accordance with this agreement, a canal was built along the lower side of Live Oak and the upper side of Trinity and then across Trinity, at joint expense, and that a permanent servitude was established in favor of Live Oak, including Bowling Green. Plaintiff charges that the present owners of Trinity, who are defendants here, have obstructed this drain by dyking the canal and destroyed her crop and have caused damage in an amount within the jurisdiction of this court. Plaintiff asked for an injunction which was issued.

Defendants moved to dissolve, and filed a peremptory exception, in which they claimed that judicial action had put an end to the drain, as made evident by the judgments which they pleaded. In support of their exception, the defendants offered two judgments, one rendered in the case of Parish of Iberville vs. A. H. Gay, and the other in the case of Andrew H. Gay vs. Mrs. Aloysia Reulet. Objection was made by plaintiff on the ground that she was not bound by them as she was not a party to the suits in which they had been obtained. The court sustained the objections and excluded the evidence, to which ruling a bill of exceptions was reserved. The motion to dissolve and the exception were overruled.

The defendants pleaded a general denial, and especially averred that the drain had been abandoned, and that it was useless, as had been decreed in suits brought to have it so decreed. Defendants set forth at some length their different grounds of defense.

We here insert a letter from the defendants to the plaintiff, as it has some bearing on the issues and will be referred to later on in our decision:

"Rosedale P. O., Iberville Parish, La., July 24th, 1900.
*"Mrs. L. R. Swain, N. O., La.*

"DEAR MADAM—Your communication of the 16th inst. has just been received, and in answer beg to state the following:

"It was far from our intention to dyke the canal of which you speak; but having been defeated by a judgment of court now on record as to the validity of that act of compromise which was entered into by Mr. Gay and Dr. Campbell, and which gave you the right of drainage through our place, we thought it our right to dyke the canal and thereby cutting off your drainage as well as those of Shady Grove and Agusta plantations of Mr. Gay. If you take the court proceedings in the case of Andrew H. Gay vs. Mrs. Joseph Webre, you will find that we claimed that the same act of compromise which gave you the right of drainage through Trinity, was of record and should be enforced, thereby giving us the right to close the slough at Rosedale crossing and pass the waters by that canal, which was supposed to be the outlet.

"Upon that point, we got a judgment of court, saying that, said act of compromise was null and void and could not be enforced. It was only after that judgment that we took the liberty to close the canal as it is. We are sorry that it has inconvenienced your Bowling Green plantation, but we have a very big fight to make ourselves with those heavy rains, we cannot help you. As to that part of the canal on the road side, you may have it, as we do not use it any more than the road; should you want to move your fence on the line you are welcome to it; we are not affected by it.

"Hoping you will understand our rights, we are
                              "Respectfully,

                    (Signed)    "MRS. JOSEPH WEBRE & Co."

It appears by a map in evidence that the course of the canal, constructed in accordance with the agreement of 1873, runs along the lower limit of Joy's place, and, also, along the lower line of plaintiffs' place to about mid-way the place where it changes its direction by turning and crossing from plaintiffs' land (leaves a public road which is situated just below defendants' line) into and across Trinity plantation.

Swain vs. Weber and Reulet.

At the point C there is a drainage machine. The contention of the defendants is that from the point A on the map, to the Trinity Canal at point C, the canal is filled with sediment, weeds, and trees, and that there is a ridge where this canal leaves the public road and crosses Trinity, through which ridge the canal runs.

After the present owner acquired Trinity, under a judgment, the defendants and Gay, the owner of Live Oak, reopened the old drainage (drainage up to 1873) canal up by the railroad on the east, and it is also evident that the reopening of this drain did not favorably affect Bowling Green, that is, plaintiff's land.

The testimony shows that there are two canals or ditches, one, as we understand it, on each side of the road. The ditch above is on the land of plaintiff and the water from it runs into the ditch in question in one or two places, small laterals having been built to drain at least a part of the water.

The testimony shows that rain water is frequently injurious to crops in the locality in wet seasons. Evidently there is great necessity to keep drains open. Plaintiff's land is cultivated by tenants, whose crops are affected by the accumulation of water from the rains.

There is no question, in our view, that if the canal between Trinity and Bowling Green is left open, much of the water will drain down to point C, and from that point to the swamp. That is surely the weight of the evidence. The owners of these properties, in 1873, saw that it would be a desirable drain, and, for that reason, doubtless, entered into the agreement before noted. In the deed by which plaintiff became the owner of part of Live Oak, it is stipulated that the agreement of 1873 shall continue in force and effect.

The principal grounds upon which defendants' rely to sustain their position are, in the first place, that the drain has been abandoned, and, in the second, that plaintiff is precluded by the judgments of the court which were offered in evidence, but which were excluded by the district judge.

Taking up the question of abandonment for decision, we have no difficulty in finding that the drain has been neglected and that for years no one has sought to keep it open as a drain. Nonetheless, some water passes through it, and to that extent the upper estate is drained. When, not long since, the owner of the estate below, i. e., Trinity, placed an obstruction in it, the result was that it dammed the water on the estate above and the crops thereon were injuriously affected by it. To the extent that it continued to be a drain, we are not inclined to the view that there was such an abandonment as justified the owner of Trinity in dyking against that much of it.

It may be a very imperfect drain, yet if it carries off the water, it cannot well be closed without causing damage to the estate above. At this point, we are led to inquire, how has plaintiff actually abandoned the benefit, limited though it may be, derived from what remains of the drain? We have not found that plaintiff relinquished it by any act or utterance. The record of the testimony shows that attempts, at least, were made as late as the year 1892 to clean out a part of the drain by working in the canals or ditches leading the water to the main drain. This court, not long since, held that the abandonment of a servitude of drain is not to be presumed. "To sustain it, clear proof is required. The court finds no proof of intention to abandon." Foley vs. Godchaux, 48 Ann. 466.

The bent and inclination of the soil is from north to south. The ridge, which was the only obstruction, has been cut down at this point for a drain following the inclination. We do not think that the obstructions placed in the drain should remain as they are.

We are informed by a letter from defendants to plaintiff, which we have quoted in full in our statement of facts, that originally it was not their intention to dyke the canal, but, having been defeated by a judgment of court annulling the agreement of 1873, they closed the canal. They expressed regret, saying at the same time, that they could not do otherwise, as they conceived that they were only exercising a right secured by the judgment. The judgment in question was not rendered contradictorily with plaintiff. She was not in any way a party to it. Besides it was a consent decree among the parties and binds only those on whose express consent it was granted. There was another judgment rendered in 1891. It confirmed a default previously entered, to which plaintiff was not a party. She cannot, in our view, be held concluded by these judgments to which she was a third party. Plaintiff acquired rights as owner of the estate above by the stipulations of the sale to her in 1881, of which she could not be divested in proceedings against others to which she was not a party. It was contemplated that she was to contribute her *pro rata* and the drain was to continue as previously. Without default, without notice of any kind, in proceedings among owners of lands near or adjacent, she cannot be prejudiced in her rights. Our conclusion is that the judgment rendered in the District Court is legal.

The authority of the Police Jury invoked by defendants may be exerted for the purpose of draining public roads and places. It cannot be of any avail when questions arise regarding rights of interested persons exclusively among themselves in which the public can have no concern. Whatever authority that body may have to reopen a slough because, when closed, a public road is not sufficiently drained, it has no authority to order that as a set-off to the reopening of the slough another drain should be closed. The record discloses that the plaintiff has not been made a party and that she had no knowledge of the proceedings. Plaintiff, beyond question, in a matter of personal interest between her and the owner of the adjacent estate, was not represented by the Police Jury. Her interests were outside of the scope of the authority of the body.

But defendants further contend that plaintiff is as well concluded as

in the case above by a judgment in the case of A. H. Gay against the defendants in which a decree was rendered to reopen the slough in question. Those were proceedings entirely between Gay, plaintiff in that case, and defendants here. They cannot be prejudicial to any rights of the plaintiff.

We recall at this time that the slough was closed in accordance with an agreement of 1873; that eight years afterward, when the late Mr. Edward J. Gay sold the land to which plaintiff avers a servitude of drain is due, he, as vendor, and plaintiff, the vendee, stipulated, as made evident by the clauses of the deed of sale: "And it is well understood that the drain established by the agreement of date August 22, 1873, between George W. Campbell and Andrew H. Gay, and Charles H. Dickinson, shall remain open to serve as the drain of the land as contemplated by said act, recorded in Miscellaneous Book No. 3, Entry 543, and that the said purchaser agrees to contribute her *pro rata* according to the number of acres sold herein, to maintain said canal in the condition necessary to drain said lands, belonging to said Gay and Dickinson at the time of the date of the said act in accordance therewith." The land in question passed into the ownership and possession of subsequent owners subject to the above quoted stipulation.

· The defendants claim the benefit of the resolutory condition arising, they allege, from abandonment, the judgments heretofore rendered, and the asserted uselessness of the drain. We have already passed upon the different issues and refer to them here only to add that in addition to the conclusion already reached in regard to them that another ground strikes us as rendering it difficult for the defendants to sustain their contention. It is that they are not the obligee of any right here, and, therefore, they are not in a position to claim the benefit of the resolutory condition. The right to reopen the slough, as we read the agreement of 1873, was reserved only to Gay and Dickinson, owners of Live Oak, and Campbell, the owner of Trinity, at the time does not seem to have sought to reserve any such right. We quote from the agreement of 1873: "The said G. W. Campbell hereby agreeing to close the said bayou and have it closed as soon as said Dickinson and Gay are satisfied that said canal carries off and relieves them of the water in its stead. Said privilege of closing said bayou is dependent upon, and contingent to the right hereby granted said Dickinson and Gay for draining through said canal to the outlet in the canal in the

lands belonging to said Campbell." The slough was closed in accordance with the agreement and the stipulations executed. After these many years have elapsed, we do not think it possible in law, and further, in view of the fact that it does not appear that any such right is secured by the agreement for the successor in title of Campbell to claim the exercise of a resolutory condition.

Defendants, in support of the right they claim to have decreed that the drain in question is a lost right of servitude, plead the prescription of ten years. The beginning of this prescription dates, defendants aver, from the first abandonment of the drain and from the time that it became evident that the drain was useless. In our view, while there was failure on the part of all concerned to sustain the drain properly, there was no such abandonment on the part of those interested as can be fixed upon as a period for grounding prescription. We do not understand that this drain was ever absolutely and entirely abandoned. Even if its use was limited, it remains that it did prove of some service as a drain, and for that reason the plea is not good.

As relates to the demand made for damages, we do not think it sustained. The extent of the damage is not satisfactorily shown, and, besides, we have very good reasons to infer that the damages were suffered by plaintiff's tenants and not by plaintiff directly.

As to the fee of attorney, no evidence having been offered in the lower court in its support, this court sustains the prior ruling. Gathe vs. Broussard, 49 Ann. 312. The other grounds presented by plaintiff to secure amendment of the judgment are equally without merit. Our learned brother of the District Court, we think, decided the issues properly.

For the reasons assigned, the judgment of the District Court is affirmed.

Rehearing refused.

### ON APPLICATION OF DEFENDANT FOR REHEARING.

BREAUX, J. Admitting the error of fact in our statement of the case, for argument's sake, we do not find, from any point of view, in the present action that our conclusion should be different from that heretofore expressed. We have not overlooked error asserted by plaintiff regarding certain facts.

We do not think that we should grant a rehearing only to have it appear of record here that an incidental fact, if erroneously stated, is not as

heretofore found in the opinion, as the asserted error of fact has not the least bearing upon the conclusion reached. Although the parties were not all parties to the sale made afterwards, the agreement in question none the less has full force and effect.

In any event, it is manifest that plaintiff alone cannot set aside the agreement of 1873. It must be done, if done at all, contradictorily with all parties concerned. The defendant obtained the right from her vendor who held it by an agreement with other owners. Unless parties are reinstated in their original right rescission cannot be enforced. Bryant vs. Stothart, 46 Ann. 485. Plaintiff cannot question the validity or binding effect of the agreement to the extent of and for the reasons stated in our original opinion.

Rehearing refused.