ROBERT V. ARMSTRONG, DEFENDANT IN ERROR, v. THE
LEHIGH AND NEW ENGLAND RAILROAD COMPANY,
PLAINTIFF IN ERROR.

Submitted December 11, 1911—Decided March 4, 1912.

The trial judge refused to charge the following request: "That where an easement is created by grant it must clearly appear that there was an intention to abandon the right; and further, that the easement claimed was created by grant through the will of Obadiah Pellet, and that non-user for twenty years under those circumstances is not conclusive evidence in itself of an abandonment;" but charged the jury as follows: "To accomplish an abandonment, the facts or circumstances must clearly indicate such an intention. Abandonment is a question of intention. Non-user is a fact in determining it, but is not, even for twenty years, conclusive evidence in itself of an abandonment. Its weight must depend upon the intention to be drawn from its duration, character and accompanying circumstances." *Held*, that the court charged the legal principle applicable to the facts of the case, and that, therefore, it was not error to refuse to charge as requested.

On error to the Supreme Court.

For the plaintiff in error, *Henry C. Hunt.*

For the defendant in error, *Levi H. Morris* and *Allen R. Shay.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff below brought his action against the defendant company to recover compensatory damages from it for injuries done to his land by reason of the defendant company maintaining a dam on its land which backs the water of a small stream, known as Papakating creek, thereby overflowing the plaintiff's lands. The trial resulted in a verdict for the plaintiff for $100.

The plaintiff in error seeks a reversal of the judgment for alleged error in the court's charge to the jury and in the

refusals of the court to charge certain requests asked for by the plaintiff in error.

The facts established by the evidence, succinctly stated, are these:

Obadiah Pellet was the owner of an extensive tract of land through which ran Papakating creek, and across which he erected a mill dam for the purpose of running a grist mill standing alongside the creek. The dam caused the water to overflow a considerable portion of his land. Obadiah died in 1849, and by his will, probated December 8th, 1849, he devised to one of his sons, John W., the land now owned by the plaintiff, and to his son Richard, two hundred and forty-four acres on which were located the mill and dam, which Richard continued to use until 1869, maintaining the overflow from the dam over the plaintiff's land. That same year the dam was carried away and the grist mill for milling purposes was abandoned, fell into decay and was removed.

In 1896, Richard conveyed to William J. Turner, for the defendant's use, eight hundredths of an acre of the land devised to him by Obadiah, the deed of which contained the following clause: "Together with the right and privilege to erect and maintain a dam four feet high parallel with and distant seventy feet southerly from the center line of said railroad and extending not more than three hundred feet from said public road; and also the privilege of digging and maintaining a basin thus formed to a depth of not more than four feet, and as far west as the iron bridge on the public road crossing said stream, the width of said pond not to exceed one hundred and twenty-five feet; and also the right and privilege to cut and harvest the ice formed on said pond as long as the property hereby conveyed shall be used for creamery purposes."

The deed was made subsequent to the deed to the plaintiff's ancestor in title, which was in 1893, and is subject to it.

There was testimony to the effect that after 1869 Richard built a dam just below the old one, or put the old one into repair, so as to make an ice pond for the purpose of collect-

ing ice, but there is no pretence that after 1869 he ever maintained a dam for milling purposes, for the mill had been abandoned in 1869, and never came into use again for milling purposes, but was suffered to go to decay as has been stated.

The insistence of the defendant company is that the devise of the mill property carried with it the appurtenant right to maintain the pond over plaintiff's property, and that there is no evidence upon which the abandonment of such right can rest.                                      :

The devise of the mill property carried with it the right to maintain the pond as it then was, but the abandonment of such right is a question of fact, and there is evidence in this case from which such abandonment may be inferred.

The alleged error mainly relied on by the defendant company for a reversal of the judgment is based upon the refusal of the court to charge: "That where an easement is created by grant it must clearly appear that there was an intention to abandon the right; and further, that the easement claimed was created by grant through the will of Obadiah Pellet, and that non-user for twenty years under those circumstances is not conclusive evidence in itself of an abandonment."

The trial judge, in substance, charged this request when he instructed the jury as follows: "To accomplish an abandonment, the facts or circumstances must clearly indicate such an intention. Abandonment is a question of intention. Non-user is a fact in determining it, but is not, even for twenty years, conclusive evidence in itself of an abandonment. Its weight must depend upon the intention to be drawn from its duration, character and accompanying circumstances."

The proposition, as charged by the court, is in the exact language of the opinion delivered by this court in that regard in *Raritan Power Co.* v. *Veghte*, 6 C. E. Gr. 480.

The only other ground urged for a reversal of the judgment by the defendant company was the refusal of the court to charge: "That the intention to hold the ancient right is to be shown by acts and not by declarations on the witness-

stand, and the intention appears in the deeds from Pellet to Turner and Borden."

This request. was properly refused, for the deeds referred to do not show any intention to hold the right to maintain a mill pond, but a pond of much smaller dimensions, that is not to exceed one hundred and twenty-five feet in width and to continue so long as it was used for creamery purposes.

Judgment should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Kalisch, Bogert, Vredenburgh, Vroom, Congdon, White, Treacy, JJ. 16.

*For reversal*—None.