## SEYMOUR WATER COMPANY *v.* LEBLINE.

[No. 24,672. Filed May 15, 1924. Rehearing denied December 16, 1924.]

1. WATERS AND WATERCOURSES.—*Complaint for Flooding Land.* —*Sufficiency.*—General allegations in a complaint for damages by flooding land that the plaintiff was the owner of the land flooded, that the flow of the water in a certain watercourse had been obstructed unlawfully and without right, to plaintiff's damage, were sufficient as against a demurrer. p. 484.

2. APPEAL.—*Abstract of Title.*—*Overruling Motion to Require Plaintiff to Furnish.*—*When Reversible Error.*—A motion to require the plaintiff to furnish an abstract of title is addressed to the sound legal discretion of the court, and overruling it could only be cause for reversing the judgment when the record shows that such discretion had been abused to appellant's prejudice. p. 485.

3. ABSTRACTS OF TITLE.—*Order to Furnish.*—*Discretion of Court.*—The granting of an order that a party shall furnish an abstract of his title is in the sound legal discretion of the court, and its action will only be reversed when it is shown that such discretion has been abused to appellant's prejudice. p. 485.

4. PLEADING.—*Abstract of Title.*—*Refusal to Order Filing.*— *Not Abuse of Discretion.*—In a suit for damages for flooding plaintiff's land, the refusal of the trial court to order plaintiff to file an abstract of title to his land was not an abuse of discretion, it not appearing that there was any doubt as to the source of plaintiff's title, nor that defendant was ignorant of any facts which would have been shown by an abstract. p. 485.

5. PLEADING.—*Overruling Demurrer to Argumentative Denial not Error.*—An argumentative denial is a denial of what is alleged in the pleading to which it is addressed, and a demurrer thereto is properly overruled, even though, because of other pleadings in the record, sustaining the demurrer would be harmless. p. 486.

6. EASEMENTS.—*Extinguishment.*—*By Occupancy by Owner of Servient Estate.*—Where an easement was created by express written contract, lapse of time and occupancy by the owner of the servient estate will not extinguish it unless there was an absolute denial of the right to the easement and the occupancy was so adverse and hostile that the owner of the easement could have maintained an action for obstructing his enjoyment of it. p. 489.

7. EASEMENTS.—*Abandonment.—Intention to Abandon Necessary Element.*—Intention to abandon and put an end to an easement is a necessary element of abandonment thereof. p. 489.

8. EASEMENTS.—*Abandonment.—Pleading.*—In an action for flooding plaintiff's land by defendant's dam, in which the defendant pleaded an easement by grant to maintain the dam, a reply alleging non-user of the dam for 42 years, but not averring an intention to abandon the easement was insufficient on demurrer. p. 489.

9. WATERS AND WATERCOURSES.—*Right of Flowage.—Adverse Possession Against.*—Farming land that is subject to a right of flowage, and raising thereon corn, hay and other farm products, would not constitute such adverse possession as would set the statute of limitations to running against the right of flowage, as such use is not inconsistent with the continued right of flowage. p. 490.

10. ADVERSE POSSESSION.—*What Constitutes.*—Adverse possession, to ripen into title, must be such as would have exposed the party in possession to an action because of what was done by him, at any and all times during the prescribed period of limitation. p. 490.

11. ADVERSE POSSESSION.—*Pleading.—General Averment Sufficient on Demurrer.*—In the absence of a motion to make the pleading more specific, a general averment that, continuously for 42 years, the party claiming adverse possession had actual, open, notorious, exclusive and adverse possession of the land, free from and hostile to all right and use of all other persons, sufficiently pleads adverse possession. p. 490.

12. PLEADING.—*Remedy for General Averments.*—The remedy for general averments in the form of conclusions in a pleading is a motion to require the pleading to be made specific by setting out therein the facts on which each of such general averments is based. p. 490.

13. WITNESSES.—*Direct Examination.—Objectionable Manner of Conducting.*—A party to an action may not cause an elaborate statement of what he assumes to be the facts in issue to be prepared by an expert and then testify to those facts by merely giving an affirmative answer to the question whether or not the statement so prepared is correct. p. 491.

14. WITNESSES.—*Direct Examination.—Leading Questions.—Discretion of Court.*—Questions should not be asked a witness by which the attorney puts into the mouth of the witness evidence which he desires to have given, and the witness merely assents to it, but the extent to which leading questions may be permitted is usually in the sound legal discretion of the trial court. p. 491.

15. EVIDENCE.—*Intention.*—*Witness May Testify as to.*—In an action for damages for flooding plaintiff's land by the erection of a dam on the site of a dam which had not been used for more than forty years, the question of abandonment being involved, it was reversible error to exclude the testimony of an officer of the defendant as to its intention relative to abandoning the easement of flowage. p. 492.

16. EVIDENCE.—*Intention.*—*How Proved.*—When the intent with which an act was done is material, a witness having knowledge thereof may testify to such intent as a fact. p. 492.

17. TRIAL.—*Instructions.*—*Must be Requested.*—The failure of the court to instruct the jury as to the material averments of the pleadings is seldom, if ever, cause for reversing the judgment, it being the duty of the party desiring such an instruction given to prepare a proper instruction and present it to the court with a request that it be given. p. 493.

18. EASEMENTS.—*Conveyance.*—*Milldam with Millsite.*—Where the owners of a mill site have acquired the right to maintain a dam in connection therewith, such right would pass by any conveyance of the millsite without special mention in the deed. p. 494.

19. EASEMENTS.—*Conveyance.*—*Erroneous Instruction.*—In an action for damages for overflowing plaintiff's land by the erection of a dam, where the defendant pleaded its ownership of a right to a dam as appurtenant to its ownership of a mill site, an instruction which singled out an intermediate conveyance of the millsite in which the dam was not mentioned, saying that it conveyed no greater interest than the grantor therein had, *held* misleading as a disparagement of that particular instrument as evidence. p. 494.

20. NAVIGABLE WATERS.— *Navigability.*— *How Established.*— *Riparian Rights.*—The legislature, by declaring the Driftwood Fork of White River a public highway, did not make it a navigable stream so as to prevent the title to the river bed from vesting in the owners of the lands on either side. p. 495.

21. PLEADING.—*Construction.*—*Presumptions.*—A pleading which uses language of doubtful meaning will be construed against the pleader, as it will be presumed that a party has stated his cause of action or defense as favorably to himself as the facts will permit. p. 497.

22. EASEMENTS.—*Abandonment.*—*Pleading.*—In an action for damages for overflowing plaintiff's land by the erection of a dam, where the defendant pleaded its ownership of a right to a dam as appurtenant to its ownership of mill site, an allegation in a paragraph of reply that the defendant's remote grantors, after the mill was destroyed by fire, withdrew from

and gave up the site, and thereafter completely failed to use said site and "abandoned" said mill and dam, *held* not to plead sufficiently that they intended to abandon said site, taking into consideration the other language used in connection therewith.  p. 497.

From Jackson Circuit Court; *James A. Cox,* Judge.

Action by Charles Lebline against the Seymour Water Company.   From a judgment for plaintiff the defendant appealed to the Appellate Court.   (Transferred to the Supreme Court under §1394 Burns 1914, Acts 1901 p. 567, §10.)   *Reversed.*

*Montgomery & Montgomery,* for appellant.

*Oren O. Swails,* for appellee.

EWBANK, C. J.—Appellee, the plaintiff below, recovered a verdict and judgment against appellant for $2,011.38, as damages for the construction of a dam in the "Driftwood" or East Fork of White river, at Rockford, near Seymour, Indiana, by which the river was caused to overflow some of his land.   Appellant's demurrers to the complaint, and to each of several paragraphs of reply were overruled, as was also its motion for a new trial, and appellant excepted to each ruling and has challenged each of them by a proper assignment of errors.

The complaint was filed January 10, 1921.   It alleged in very general terms that plaintiff was the owner of a certain described tract of seventy-seven acres

1.   of farm land that bordered on White river, a short distance above the dam complained of; that in 1917 the defendant built and had since maintained a permanent dam, of stone, gravel and concrete, with wing walls, by which it had permanently obstructed the flow of water in the river, and had caused the level of the water in that part of the river flowing across plaintiff's land to be raised; that by reason thereof, when the river was swollen by rains so as to overflow

plaintiff's lands, the water was delayed in running off, and was caused to stand on plaintiff's fields, which were thereby made unfit for cultivation, and unsalable, to plaintiff's damage in the sum of $9,000; that the erection and maintenance of said dam and obstructions was wrongful, unlawful and without right, and without the consent, leave or license of plaintiff and without the tender or payment of his damages. The only supposed defect in this complaint suggested by appellant's brief is that it fails to state the exact character of plaintiff's title, and does not say anything about what may have been done by his predecessors in title in the matter of granting the right to flow his lands by a dam, or submitting to such flowage for a long series of years. But, in the absence of a motion to make the complaint more specific, we think the general allegations that he was the owner, and that the flow of the water had been obstructed unlawfully and without right, to his damage as stated, were sufficient to withstand the demurrer.

Overruling a motion to require appellant to file an abstract of his title is complained of. Such a motion is addressed to the sound legal discretion of the trial court, and overruling it could only be cause for reversing the judgment if it were shown that such discretion had been abused, to appellant's prejudice. *Phoenix Ins. Co.* v. *Rowe* (1889), 117 Ind. 202, 204, 20 N. E. 122. It does not appear that there was any doubt as to the source of plaintiff's title, nor that appellant was ignorant of any facts which would have been shown by an abstract. What meander lines were run to make that section a "fractional section," containing less than 640 acres, when the land was originally surveyed by the United States government preparatory to selling it to settlers, even if shown to be pertinent as having relation to any part of plaintiff's farm, would not be shown by an abstract of title.

. We are not to be understood as holding that the complaint for damages tendered an issue as to plaintiff's title, or that it did not do so. But even if it did, no available error is shown to have been committed by overruling the motion that he be required to furnish an abstract.

Appellant filed three paragraphs of answer, to which the plaintiff replied by a general denial, and also by certain affirmative pleas, to which appellant filed demurrers that were overruled. Counsel point out that certain of these paragraphs of affirmative reply were "argumentative denials," and pleaded only facts in denial of what was alleged in the answers, of which proof could be made under the issue formed by the reply of denial, so that a demurrer might have been sustained to each of them without being cause for a reversal. *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379, 393, 72 N. E. 132; *Nashville, etc., R. Co.* v. *Johnson* (1914), 60 Ind. App. 416, 422, 106 N. E. 414, 109 N. E. 912. But an "argumentative denial" is still a denial of what is alleged in the pleading to which it is addressed, and overruling a demurrer to it is not error, even though sustaining the demurrer would have been harmless. *Heed, Rec.,* v. *Gummere, Admx.* (1922), 192 Ind. 227, 136 N. E. 5. Appellant's fourth paragraph of answer pleaded facts to the effect that, in 1850 and long before then, one Fischli owned the lands now owned by plaintiff, and also the lands now owned by appellant, with a mill and dam thereon, located where appellant's power house and dam are now situated; that he died the owner thereof; that in 1856 and 1857, his heirs conveyed to appellant's remote grantor seventeen acres of his said lands on which the mill and dam were situated, "together with the mill and all machinery, tools and implements appurtenant thereto, and the dwelling houses, stables and

other improvements situated on and belonging to said mill property; also all such right to the bed of the river and the right to join said mill dam to the opposite bank of the river, and all other rights and privileges to said premises" which the grantors were competent to convey; that said lands, together with said water rights and all privileges and appurtenances to the same belonging, were, by subsequent deeds, duly conveyed to defendant (appellant), who is now and for thirty years has been the owner and in possession of the same; that after making said conveyance, the said heirs of Fischli conveyed other lands of their ancestor, including the tract described in plaintiff's complaint as belonging to him, to plaintiff's remote grantors by a deed, in writing, which contained the following express reservation: "It being hereby understood by this indenture that the above sale has been made upon the express condition that the owners of the mill at Rockford, their heirs and assigns, shall have a perpetual right to join the mill dam into the shore on the west side of the river opposite the mill and to do all things in and upon said bank necessary and proper to secure said dam from injury, and keep it at all times in good repair." That this deed was duly recorded in 1857 in the county where said lands lie and the lands thereby purchased were partitioned among the grantees in said deed, when the portion now owned by plaintiff was set off to his father, as one of them, and he conveyed it to plaintiff; that plaintiff and his said grantors, back to the year of 1857, took and have held title to said lands, subject to said dam privilege and water easement, and with knowledge thereof; and that at the time said conveyances were executed with the reservations as set out, the mill was a going concern, operated by water power developed from a dam of a height stated, across the bed of the river at the same place where defendant's dam is now lo-

cated, which threw the waters of said river back upon the lands described in the complaint to a height and depth greater than that existing at the time the complaint was filed.

Plaintiff's second paragraph of reply to this answer alleged that the mill which stood on defendant's lands at the time they were conveyed by the heirs of John Fischli to the remote grantors of appellant in 1856 was afterward burned and completely destroyed, washed away and suffered to fall into decay in the year 1875, so that thereafter, plaintiff's lands were not flooded or injured by the dam until in 1917, and that, during all of the forty-two years intervening, defendant and its said grantors failed to use and completely and wholly abandoned said mill and dam, and, without interruption, ceased to flood or damage by water or otherwise the lands of plaintiff described in his complaint. A demurrer to this paragraph of reply for the alleged reason that it did not state facts sufficient to avoid the answer, pointing out that it only alleged nonuser, without averring an intention to abandon, or showing that plaintiff's possession was adverse and hostile during the period of nonuser, was overruled and an exception was reserved. Appellee seeks to support the ruling by citing authorities to the effect that if an easement was acquired by prescription by continuous use for twenty years, nonuser for a like period may be deemed an abandonment of such easement. *Collett* v. *Board, etc.* (1889), 119 Ind. 27, 32, 21 N. E. 329, 4 L. R. A. 321; *Town of Freedom* v. *Norris* (1891), 128 Ind. 377, 382, 27 N. E. 869; *French* v. *Braintree Mfg. Co.* (1839), 40 Mass. (23 Pick.) 216; *Hazard* v. *Robinson* (1823), 3 Mason 272, Fed. Cas. No. 6281. But the rule is different where the easement was created by express grant or reservation, in writing. *Town of Freedom* v. *Norris, supra.*

Where the easement was created by express written contract, lapse of time and occupation by the owner of the servient fee will not extinguish it, unless

6. there was an absolute denial of the right to the easement and the occupation was so adverse and hostile that the owner of the easement could have maintained an action for obstructing his enjoyment of it. *Kammerling* v. *Grover* (1894), 9 Ind. App. 628, 631, 36 N. E. 922; *Cleveland, etc., R. Co.* v. *Griswold* (1912), 51 Ind. App. 497, 510, 97 N. E. 1030; *Perry* v. *Carey* (1918), 68 Ind. App. 56, 60, 119 N. E. 1010; *Vandalia R. Co.* v. *Wheeler* (1914), 181 Ind. 424, 103 N. E. 1069; *State* v. *Suttle* (1894), 115 N. C. 784, 788, 20 S. E. 725; *Butterfield* v. *Reed* (1893), 160 Mass. 361, 35 N. E. 1128; *Edgerton* v. *McMullan* (1895), 55 Kans. 90, 39 Pac. 1021; *Gassert* v. *Noyes* (1896), 18 Mont. 216, 44 Pac. 959; *Lindeman* v. *Lindsey* (1871), 69 Pa. St. 93, 8 Am. Rep. 219; *Haigh* v. *Lenfesty* (1909), 239 Ill. 227, 87 N. E. 962; Note 1 A. L. R. 884, *et seq.*, and numerous authorities cited.

Of course, it is possible for a complete discontinuance of all use of an easement, even though created by express grant, with the intention thereby wholly to

7, 8. abandon it, to constitute such a surrender as will terminate the easement. But an intention to abandon and put an end to it is a necessary element of such abandonment, and for lack of an averment that the appellant or its grantors had such an intention, the reply under consideration failed to state facts sufficient to avoid the alleged defense on the theory of abandonment. *Butterfield* v. *Reed, supra; Gassert* v. *Noyes, supra; McArthur* v. *Morgan* (1881), 49 Conn. 347, 350; *Hatton* v. *Cale* (1911), 152 Iowa 485, 494, 132 N. W. 1101; *Barnett* v. *Dickinson* (1901), 93 Md. 258, 267, 48 Atl. 838; *Armstrong* v. *Lehigh, etc., R. Co.* (1911), 82 N. J. Law 704, 706, 82 Atl. 899; *Snell* v. *Levitt*

(1888), 110 N. Y. 595, 602, 18 N. E. 370, 1 L. R. A. 414; *Hennessy* v. *Murdock* (1893), 137 N. Y. 317, 325, 33 N. E. 330; *Adams* v. *Hodgkins* (1912), 109 Me. 361, 366, 84 Atl. 530, 42 L. R. A. (N. S.) 741; *Swain* v. *Weber* (1901), 106 La. 161, 166, 30 So. 331; *Sweezy* v. *Vallette* (1914), 37 R. I. 51, 54, 90 Atl. 1078; *Parkins* v. *Dunham* (1848), 3 Strob (S. C.) 224, 228; *Scott* v. *Moore* (1900), 98 Va. 668, 686, 37 S. E. 342, 81 Am. St. 749; *Wendler* v. *Woodard* (1916), 93 Wash. 684, 688, 161 Pac. 1043. For the reasons given, the demurrer should have been sustained to the second paragraph of reply to the sixth paragraph of answer.

The third paragraph of reply to the same answer alleged substantially the same facts as the second paragraph, and also alleged that from 1875 until 1917 plaintiff and his grantor continuously, without interruption, had and enjoyed actual, open, continuous, notorious, exclusive and adverse possession and use, under claim and color of title to all his said described real estate, free from and adverse and hostile to any and all right and use whatever of defendant and its grantors to flood or flow water back upon said lands or to make any use thereof whatever, and that, during all of said forty-two years, he and his grantors had used said real estate for farming purposes, and had raised corn and hay and other farm products thereon, and had cultivated said land free from any overflow or use whatever by defendant or its grantors. Appellant is correct in its contention that merely farming the land, and raising thereon corn and hay and other farm products, did not constitute such adverse possession as would set the statute of limitations to running against the right of flowage by rebuilding the dam. Such cultivation was not inconsistent with the continued right of flowage. Adverse possession, to ripen into title, must be such as would have exposed

the possessor to an action because of what was done by him, at any and all times during the twenty years that his possession continued. *State* v. *Suttle, supra; Butterfield* v. *Reed, supra; Parkins* v. *Dunham, supra.* But, in the absence of a motion to make the pleading more specific, the general averment that, continuously for forty-two years, the plaintiff had and enjoyed actual, open, notorious, exclusive and adverse possession of the land, free from and hostile to all right and use of the defendant, sufficiently pleaded title by adverse possession to withstand a demurrer, and was not limited in its scope by the further averment that plaintiff had farmed the land. The remedy to confine the effect of general averments in a pleading to particular facts· also stated is by a motion to require the pleading to be made specific by setting out therein the facts on which each general averment is based. *Terre Haute, etc., Trac. Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740, 742; *Lake Erie, etc., R. Co.* v. *Molloy* (1922), 78 Ind. App. 72, 134 N. E. 913, 915. For the same reason, it was not error to overrule the demurrer to the third paragraph of reply to appellant's sixth paragraph of complaint, which also pleaded title by adverse possession, substantially in the language of the paragraph above set out.

While plaintiff was testifying as a witness in his own behalf, he was shown what purported to be a plat of his farm, in several different colors, with many lines drawn on it, and figures which a surveyor who said he made it had testified showed the elevation above sea level at different points, with many words of explanation written thereon, including what the writing said was indicated by the red color and each of the pale blue and dark blue colors respectively that extended on either side of the red coloring as to the· extent of the overflow, and was asked the following

question: "I will hand you plaintiff's Exhibit B, which indicates certain blue marks, and ask you to tell the jury whether that approximately represents the shape of that wet strip?" Appellant's objection on the ground that the question was leading and suggestive was overruled, and it excepted. The objection should have been sustained. A party may not cause an elaborate statement of what he assumes to be the facts in issue to be prepared by an expert, and then testify to those facts by merely giving an affirmative answer to the question whether or not the statement so prepared is correct, instead of testifying to his own independent knowledge of the subject, in answer to questions asking for what he knows as to each fact. Questions should not be asked by which the attorney puts into the mouth of the witness evidence which he desires to have given, and the witness merely assents to it. But the extent to which leading questions may be permitted with relation to formal matters and facts not seriously in dispute is controlled by the sound legal discretion of the trial court, and we do not find it necessary to decide whether such an abuse of discretion is shown in this case as would be cause for reversing the judgment, since it must be reversed for other reasons.

A witness testified that he was and for the past three years had been the president of the appellant corporation and had been connected with it "ever since its organization over thirty years"; and after having been called by plaintiff to testify, and having testified that the company then intended to maintain the dam permanently, he was called by appellant as a witness, and was asked what had been the intention and purpose of the company in the thirty years since the mill site and dam privilege were conveyed to it "with regard to abandoning or giving up that water privilege?" An offer was made of testimony in answer

to the question that the management and officers at no time had intended to abandon or give up this water privilege, but an objection was sustained, and the witness was not permitted to answer. This was error. The intention with which the corporation acted when it delayed rebuilding the dam that had washed out, if it did so, was material on the issue of abandonment. And when the intent with which an act was done is material, a witness having knowledge thereof may testify to such intent as a fact. *Pittsburgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101, 106, 47 N. E. 332; *Heap* v.-*Parrish* (1885), 104 Ind. 36, 40, 3 N. E. 549; *Sedgwick, Admr.,* v. *Tucker* (1883), 90 Ind. 271, 281; *Bidinger* v. *Bishop* (1881), 76 Ind. 244, 255. The fact that this witness had been president of the corporation only three years, and that it had not been shown in what capacity he was "connected with" it during the rest of the period of thirty years inquired about, went to the weight of his proposed testimony, rather than its competency.

Appellant complains because the court, while instructing the jury that the burden was upon the plaintiff to prove the material allegations of the complaint before he could recover, and was upon the defendant to prove the material allegations of at least one paragraph of affirmative answer before it could avail itself of the defense pleaded in any such paragraph, failed to read the pleadings to the jury or to give an instruction stating what were the material averments of any of them. Appellant should have prepared a proper instruction and have presented it with a request that it be given. The mere omission to give an instruction that was not asked is seldom, if ever, cause for reversing a judgment.

Instruction No. 17 correctly told the jury that if the owners of the millsite through whom appellant derived

title acquired the right to maintain a dam in connection therewith, such right would pass in any conveyance of the millsite as an appurtenance, without special mention in the deed. *Eshelman* v. *Snyder* (1882), 82 Ind. 498, 501, 502; *State* v. *Suttle, supra.* Instruction No. 5 was inconsistent with the law as so declared, in that it singled out an intermediate conveyance of the millsite in which the dam was not mentioned, concerning which, it told the jury that the deed from the grantee named in such deed "conveyed no greater interest or right in said land from said grantee than he himself had." Although not materially inaccurate as an abstract proposition of law, this was misleading as a disparagement of the particular item of documentary evidence referred to.

There was evidence that in 1870 one Anna Rockstroh received a conveyance for and became the owner of an undivided interest in the mill site "with all improvements and appurtenances thereon," and that in 1874 a judgment was recovered against her, and an execution thereon was issued on which an undivided one-third of the land was sold by the sheriff in December of that year, and that in 1877, pursuant to such sale and purchase, the sheriff executed a deed conveying such lands to one of appellant's remote grantors through whom it derived title to the mill site. Counsel for appellant state that this judgment was recovered upon foreclosure of a mortgage for unpaid purchase money, but that fact is not shown by the evidence. A son of Anna Rockstroh was called by plaintiff as a witness and testified that in 1875 the mill that stood on said real estate burned down, and was not rebuilt, and that his mother then "moved away to get out of the trouble," and went to Texas, from whence she never returned.

The court gave an instruction stating that any sheriff's deed purporting to convey the interest of Anna

Rockstroh in any real estate to such person could not convey a greater interest or right therein than she had owned. As applied to the issue of alleged abandonment of the water right and to the evidence set out above, this instruction was misleading. Nothing which Anna Rockstroh might do toward abandoning the easement in 1875, after the lands and appurtenances had been sold on execution in 1874, could affect the title conveyed by the sheriff's deed to the purchaser at such sale, executed after the year for redemption had expired. And it was error in this manner to single out and disparage that particular item of evidence. *Shenkenberger* v. *State* (1900), 154 Ind. 630, 640, 57 N. E. 519.

We do not think the acts of the legislature of Indiana cited by appellant which declared the Driftwood Fork of White river to be a public highway at this point 20. make it such a navigable stream as that title to the river bed never vested in the owners of the lands on either side of the river to whom the measured area outside of the meandered lines was conveyed by the United States, if title would so vest except for those statutes. Neither was there any attempt to prove where those meandered lines were run, nor whether the overflowed lands were within or outside of them.

Other questions discussed by counsel may not arise upon a retrial of the case.

The judgment is reversed, with directions to sustain the demurrer to each second paragraph of reply to each of the fourth and sixth paragraphs of answer, and for further proceedings not inconsistent with this opinion.

Myers, J., absent.

## ON PETITION FOR REHEARING.

EWBANK, J.—Appellee insists that by the use of the word "abandon" in his second paragraph of reply, he did allege that defendant and its grantors withdrew

from and gave up the dam site with the intent thereby to surrender and terminate their right to flow plaintiff's lands. That paragraph alleged (in part) as follows:

"That in the year 1875 said mill was burned and completely destroyed, washed away and fell into decay, and plaintiff's said land was never flooded or injured by said dam thereafter. That for more than 40 years thereafter, to wit, from 1875 continuously till 1917, defendant and its grantors completely failed to use and completely and wholly abandoned said mill and said dam, and during all of said 42 years without interruption completely failed and ceased to flood or damage by water or otherwise plaintiff's said land."

It will be observed that the language quoted alleges many facts, all of which go to the points that the mill was destroyed by fire, water and decay, and that thereafter, for many years, the dam was not used, and plaintiff's land was not flooded. But appellee relies on an implication from the allegation that defendant and its grantors "abandoned" the mill and dam, as conveying the meaning that they ceased to use it with the intention to relinquish all further right thereto. Webster's International Dictionary, the New Standard Dictionary and the Century Dictionary give many definitions of and many synonyms for the word "abandon," but none of them mentions intent as a necessary element of its definition. Webster gives as synonyms (among others) to quit, to give up, to surrender, to desert, to leave, to withdraw from. The New Standard adds to this list of synonyms (among others) to depart from, to forego and to vacate. And the Century adds (among others) to detach oneself from and to evacuate. Other definitions are also given, some of which seem to carry the meaning that the leaving referred to is with an inten-

tion to give up all interest in or claim to the thing abandoned.

But if one who files a pleading uses words that may have either of two or more meanings, so as to leave the exact purport in doubt, that construction must be adopted which is least favorable to the pleader. It is presumed that a party will state his cause of action as favorably to himself as the facts will permit. And where plaintiff, in alleging that the mill was destroyed and suffered to decay, that defendants failed to use the dam and ceased to flood plaintiff's land or to damage it by water (none of which averments had any reference to his intention), interjected the statement that defendant "abandoned" the mill and dam, he cannot successfully insist that the court shall pass by the obvious meaning of the word used, as a further charge that defendant left, deserted, vacated, withdrew from, and otherwise quitted the dam, in line with many expressions used in the same connection, and bolster up his pleading by fixing upon the word "abandon" a meaning that includes an intention which it does not necessarily express, not intimated by the other language with which it is used.

The petition for a rehearing is overruled.